Hillsborough
No. 89-211

THE STATE OF NEW HAMPSHIRE

v.

DAVID L. WILLIAMS

October 19, 1990

*John P. Arnold*, attorney general (*John S. Davis*, assistant attorney general, on the brief and orally), for the State.

*James E. Duggan*, chief appellate defender, of Concord, by brief and orally, for the defendant.

PER CURIAM. The defendant, David L. Williams, was convicted of six class A felony counts of theft, RSA 637:3, :11, and seven class B felony counts of fraud, RSA 421-B:3, :24, after a jury trial in Superior Court (*Murphy*, J.). He was sentenced to six concurrent terms of imprisonment of five to ten years each for the theft convictions, and seven deferred, consecutive terms of imprisonment of three and one-half to seven years each for the fraud convictions. He is currently serving two consecutive terms of imprisonment of three years each for violations of federal securities law, and he is serving these federal terms concurrently with the State terms of imprisonment. Williams appeals the theft and fraud convictions, claiming that the trial judge improperly took away from the jury two important issues of fact. For the reasons stated below, we affirm the six theft convictions and overturn the seven fraud convictions.

Williams's convictions stem from his involvement with the "Blondheim" companies. He was an investment advisor and a financial planner, as well as the principal owner of Blondheim Investment Advisors, Inc. (BIA) and Blondheim Real Estate, Inc. (BRE). In addition, Williams was the managing general partner of twenty real estate limited partnerships, all of which owned and rented residential properties. Through BIA, Williams advised clients about investments such as real estate limited partnerships. He used BRE to manage his limited partnerships' rental properties.

In 1984, Williams created five "spin-off" limited partnerships. Each "spin-off" was formed in order to acquire rental properties owned by Williams's other limited partnerships. Williams's fraud convictions result from false and misleading statements he made while selling interests in these "spin-off" limited partnerships and

assigning a promissory note in exchange for a cash contribution to one of the "spin-offs." The characteristics of the assigned note are the same as those of the limited partnership interests for purposes of the following analysis, and we will therefore refer to it as a limited partnership interest. At trial, the judge instructed the jury that the limited partnership interests at issue *were securities* for purposes of determining whether Williams committed securities fraud.

Williams was convicted of theft after the State proved he stole approximately $70,000 in tenant security deposits out of the BRE tenant escrow account. He illegally caused eight checks to be drawn on this account over the course of ten months: three for the purpose of paying property taxes, and the other five in order to pay various creditors. The State consolidated the charges relating to the first three unlawful takings listed above into one count.

On appeal, Williams makes two claims of trial court error. First, he argues that the trial judge's jury instruction, categorizing the limited partnership interests as securities, unlawfully took from the jury an issue of fact, as well as the determination of an element of the crime charged. Williams claims, therefore, that the trial court violated his right to a jury trial as guaranteed by part I, article 15 of the New Hampshire Constitution, and the sixth and fourteenth amendments to the United States Constitution.

▇▇▇ We agree that the trial court's instruction to the jury was improper. The sixth and fourteenth amendments to the United States Constitution, as well as part I, article 15 of the New Hampshire Constitution, guarantee every criminal defendant the right to a jury trial. The fourteenth amendment and part I, article 15 have been interpreted as entitling a criminal defendant to a jury determination on all factual elements of the crime charged. *See In re Winship,* 397 U.S. 358, 363 (1970); *State v. Sands,* 123 N.H. 570, 591, 467 A.2d 202, 215 (1983). For a defendant to be convicted of violating RSA 421-B:3, the State must prove beyond a reasonable doubt that she or he committed fraud "in connection with the offer, sale, or purchase of any security . . . ." RSA 421-B:3. It follows that part of the State's burden in such a case as this is proving that the investment interests sold were securities. Whether or not the limited partnership interests here were securities was a question of fact for the jury, *see United States v. Johnson,* 718 F.2d 1317, 1323 (5th Cir. 1983), and it was error for the judge to decide this question as a matter of law.

▇▇▇ The State concedes it was error for the judge to decide this question as a matter of law, but argues in turn that this error was

harmless beyond a reasonable doubt, *see State v. Ruelke*, 116 N.H. 692, 694, 366 A.2d 497, 498 (1976), and that we should therefore affirm Williams's fraud convictions. We disagree, because the harmless error analysis set forth in *Ruelke* does not apply to this case. While we have not previously addressed the issue of applying the harmless error doctrine to a case like this, federal courts have done so. In the following discussion, we rely on federal cases to decide Williams's federal constitutional claim, but we use these cases only to guide us in ruling on Williams's State constitutional claim. *See State v. Ball*, 124 N.H. 226, 233, 471 A.2d 347, 352 (1983).

In *Chapman v. California*, 386 U.S. 18 (1967), the United States Supreme Court articulated the harmless error doctrine and "rejected the argument that errors of constitutional dimension *necessarily* require reversal of criminal convictions." *Rose v. Clark*, 478 U.S. 570, 576 (1986) (emphasis added). Instead, the Court has stated that only such constitutional errors as "necessarily render a trial fundamentally unfair . . . require reversal without regard to the evidence in the particular case." *Id.* at 577. These errors include the introduction of a coerced confession, the complete denial of a defendant's right to counsel, adjudication by a biased judge, and the direction of a verdict for the prosecution in a criminal jury trial. *Id.* at 577–78. The harmless error doctrine does not apply to such errors. *Id.*

 Because the error committed in this case is akin to the direction of a verdict for the prosecution on an element of the offense charged, it is a constitutional error requiring reversal without regard to the weight of the evidence. The trial judge determined that the limited partnership interests *were* securities. This "fact" was "essential to conviction" because Williams's securities fraud convictions "could stand only if the jury concluded that this fact was proved beyond a reasonable doubt." *United States v. White Horse*, 807 F.2d 1426, 1429 (8th Cir. 1986); *see* RSA 421-B:3 (statute only applies to fraud committed "in connection with the offer, sale, or purchase of any *security* . . ." (emphasis added)). Thus we can say that "error was committed because the jury, not the judge, must decide that every fact essential to conviction was established." *United States v. White Horse*, 807 F.2d at 1429. "[W]hen an instruction prevents the jury from considering a material issue, it is equivalent to a directed verdict on that issue and therefore cannot be considered harmless." *Hoover v. Garfield Heights Municipal Court*, 802 F.2d 168, 177 (6th Cir. 1986), *cert. denied*, 480 U.S. 949 (1987). Because the judge, and

not the jury, determined an essential element of the crime of securities fraud, Williams's right to a jury trial was interfered with substantially. Therefore, we must reverse Williams's securities fraud convictions and remand.

Williams's second argument on appeal concerns his six class A felony theft convictions. He contends that each instance of check-writing was in furtherance of one common scheme to steal money from the BRE tenant escrow account. Therefore, he believes he should have been convicted of no more than *one* class A felony theft count, even though each check drawn on the escrow account was written in an amount over $1,000, and thus met the requisite level for a class A felony theft charge. RSA 637:11, I. More specifically, Williams argues here that the jury should have been instructed to determine, based on Williams's intent, whether he was guilty of one theft or several. Because the trial judge refused to give such an instruction, Williams argues that an essential factual determination was wrongfully taken from the jury.

As Williams points out, the *prosecution* in this State may ask a jury to aggregate several class B felony or misdemeanor theft counts in order to meet the monetary requirement for a class A felony theft conviction. RSA 637:2, V(a) states: "Amounts involved in thefts committed pursuant to one scheme or course of conduct, whether from the same person or several persons, may be aggregated in determining the grade of the offense." We interpreted this statute in *State v. Sampson*, 120 N.H. 251, 413 A.2d 590 (1980).

> "The statute . . . contemplates that several acts may constitute one crime if impelled by one intent. Whether a series of thefts constitutes independent acts amounting to several misdemeanors or one continuing act amounting to a class B [or A] felony, therefore, turns on the defendant's state of mind or intent. . . . A determination of the defendant's intent, however, is a question of fact for the jury."

*Id.* at 256, 413 A.2d at 592 (citations omitted).

■ The notion that, assuming proof of a common theft scheme, the prosecution should be permitted to aggregate several misdemeanor or class B felony counts into one class A felony count is widely held. *See, e.g., Ellis v. State*, 469 So. 2d 1256, 1260 (Miss. 1985); *People v. Cox*, 286 N.Y. 137, 141–43, 36 N.E.2d 84, 86 (1941); *State v. Vining*, 2 Wash. App. 802, 808–09, 472 P.2d 564, 568 (1970); Guthrie, *Larceny—Takings as Single or Separate*, 53 A.L.R.3d 398, 401 (1973). The notion that the *defendant* should be permitted to

prove a common intent or scheme, in order to aggregate *several* class A felony theft counts into *one* class A felony, is not so widely held. Apparently, only one jurisdiction, California, espouses this view. *See People v. Packard,* 131 Cal. App. 3d 622, 182 Cal. Rptr. 576 (1982). We decline to follow California's example.

Our sentencing statutes provide that a person convicted of one class A felony may be sentenced to no more than fifteen years' imprisonment for that single conviction. RSA 651:2, II(a). Therefore, if Williams were allowed to present the aggregation issue to a jury, and succeeded in proving a common scheme to steal, a judge could sentence him to no more than fifteen years imprisonment, even though he stole over $70,000, well over the monetary level required for a class A felony conviction. The deterrent effect of our legislature's sentencing statute would be greatly diminished if a thief who stole $1,001, one thousand times, could be sentenced to the same amount of imprisonment as a thief who stole $1,001 only once, simply by proving a common scheme to steal. The Supreme Judicial Court of Massachusetts, where the base level for a felony conviction is $101, has reached a similar conclusion.

> "The question before us is one of legislative intent. The intent of the Legislature . . . would be frustrated if a person who steals a large sum of money (more than $100) from a single victim in several separate takings of small (less than $100) sums, could escape prosecution as a felon . . . . Surely, however, it does not follow that the Commonwealth must charge successive thefts from a single victim pursuant to a single scheme as one crime. Such a requirement would also frustrate clear legislative intent. It is not reasonable to believe that . . . the Legislature intended that a person who steals $4,000,000 from his employer by 180 separate takings is subject to no greater maximum penalty than is one who steals $101 from his employer on one occasion."

*Commonwealth v. Murray,* 401 Mass. 771, 774–75, 519 N.E.2d 1293, 1295–96 (1988). We will not disturb the trial court's rulings, nor overturn the jury's convictions.

*Affirmed in part; reversed in part; remanded.*

HORTON, J., did not sit.