Strafford
No. 90-363

### THE STATE OF NEW HAMPSHIRE

v.

### DENNIS J. SOUCY

January 31, 1995

*John P. Arnold*, attorney general (*Jeffrey W. Spencer*, assistant attorney general, on the brief and orally), for the State.

*W. Kirk Abbott, Jr.*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

HORTON, J. The defendant, Dennis Soucy, was convicted of manslaughter, RSA 630:2 (1986), and first degree assault, RSA 631:1 (1986) (current version at RSA 631:1 (Supp. 1994)), after a jury trial in Superior Court (*Nadeau*, J.). He argues, *inter alia*, that the trial court erroneously excluded evidence that the victim would not have died but for the negligence of his treating physicians, and that his twin

convictions of manslaughter and assault violate the double jeopardy clause of part I, article 16 of the New Hampshire Constitution. We reverse the manslaughter conviction, conditionally vacate the assault conviction, and remand.

The following facts are supported by the evidence. One evening, Robert Duval walked unannounced and uninvited into Soucy's home. Soucy severely beat Duval, kicking him twice in the side and punching him in the face. The force of these blows fractured several of Duval's facial bones and ribs, collapsed one of his lungs, and punctured his spleen. The attack ended outdoors, where Soucy struck Duval with a lawn chair and then left him. Later, a friend of Duval happened to discover the stricken man in Soucy's yard and brought him to the hospital. Physicians detected and treated all of his injuries except the lacerated spleen, which slowly bled until he died three days later. Soucy was charged with manslaughter and first degree assault.

An offer of proof, prior to trial, disclosed that two medical experts were willing to testify at trial that Duval would not have died if the spleen's tear had been discovered earlier and repaired. Such failure to notice the injury, they each said, was negligence, but neither termed the negligence "gross." Soucy sought to present this evidence to the jury as a supervening cause of Duval's death, sufficient to relieve him of criminal responsibility for manslaughter. The trial court, however, ruled against such admission, adopting the State's argument that evidence of medical malpractice could not be admitted as a supervening cause unless the malpractice constituted gross negligence and was the "sole" cause of death. The court ruled as a matter of law that the alleged negligence was not the sole cause of Duval's death, and it did not submit that issue to the jury.

On appeal, the parties dispute the proper formulation of the supervening cause test. The focus on which supervening cause test should have been applied, however, ignores a more fundamental problem; namely, even if the trial court properly embraced the sole cause test, the defendant should have been allowed to introduce evidence of medical negligence so that the *jury* could determine whether that test was met. As we explained in *State v. Williams*, 133 N.H. 631, 633, 581 A.2d 78, 80 (1990), part I, article 15 of the New Hampshire Constitution entitles a criminal defendant to a jury determination on all the factual elements of the crime charged. In *Williams*, the defendant was charged with securities fraud based on the sale of limited partnership interests. At trial, the judge ruled as a matter of law and instructed the jury that the limited partnership interests at issue were securities for purposes of determining whether the defendant committed securities fraud. We held that inasmuch as a determination that the limited partnership interests were securities

was a fact essential to conviction for securities fraud, the trial court judge erred in instructing the jury that the fact had been established. Because the trial court's error was tantamount to directing a verdict on that factual element, we refused to engage in a harmless error analysis. *Id.* at 634, 581 A.2d at 81.

■ ■ In the present case, the defendant was charged with manslaughter, RSA 630:2, I(b), defined as recklessly causing the death of another. Whether the defendant "caused" the death is a factual element of the crime, and therefore one which must be determined by the jury. Here, the defendant contended that he did not "cause" the death because of the supervening medical negligence. The proper role of the trial court here, then, was to determine the proper supervening cause test, admit appropriate medical evidence relevant to whether that test was met, and instruct the jury as to that test. In the present case, specifically, the defendant should have been allowed to introduce evidence of medical negligence so that the jury could decide whether the sole cause test embraced by the trial court was met. The fact that the supervening cause test used by the trial court included a gross negligence requirement does not affect this conclusion because, once the standard of care is established by expert testimony, the jury can determine for itself the degree of deviation from that standard. *Jamas v. Krpan,* 568 P.2d 1114, 1115 (Ariz. Ct. App. 1977). Accordingly, we hold that the trial judge's exclusion of this evidence and removal of part of the causation issue from jury determination was error. Because such a violation of a defendant's right to trial by jury renders a trial fundamentally unfair, we do not apply a harmless error analysis. *See Williams,* 133 N.H. at 634, 581 A.2d at 80.

■ Although the causation element must be submitted to the jury, not all potential defenses to the element are jury issues. Only defenses raised and supported by some evidence fall to the province of the jury. *State v. Hast,* 133 N.H. 747, 749, 584 A.2d 175, 176 (1990); *State v. Aubert,* 120 N.H. 634, 635, 421 A.2d 124, 125 (1980).

■ ■ It may be argued that whereas only "some evidence" is required to get a pure defense to the jury, an affirmative defense, requiring the defendant to prove the matter on a balance of the probabilities, could be taken from the jury when no reasonable juror could find that the burden was met. A pure defense is a denial of an element of the offense, while an affirmative defense is a defense overriding the element. *See United States v. Bailey,* 585 F.2d 1087, 1125–26 (D.C. Cir. 1978) (Wilkey, J., dissenting), *reversed,* 444 U.S. 394 (1980); *People v. Frye,* 10 Cal. Rptr. 2d 217, 223 (Cal. Ct. App. 1992); 21 AM. JUR. 2D *Criminal Law* § 183, at 338 (1981). The former must be

negated by the State by proof beyond a reasonable doubt and must be submitted to the jury for determination. *Cf. In re Winship*, 397 U.S. 358, 364 (1970). The latter need not be negated by the State. The burden of proof to establish an affirmative defense is on the defendant, who must carry this burden on a balance of the probabilities. *See State v. Little*, 121 N.H. 765, 772, 435 A.2d 517, 521 (1981); *see also* RSA 626:7, I(b) (1986) (regarding burden of proof in matters statutorily defined as affirmative defenses under the New Hampshire Criminal Code).

■ ■ The issue of supervening cause falls into the former category. Causation is an element of the crime of manslaughter. The State must prove, beyond a reasonable doubt, the existence of a causal link from the criminal act to the death. Although not statutorily defined as either a "defense" or as an "affirmative defense" under the New Hampshire Criminal Code, assertion of supervening cause is an effort to negate this link. If, in the presence of an alternate cause, the causal link remains, causation is established. If, in the presence of an alternative cause, the link is broken, causation is not established. Thus, if some evidence is offered, otherwise admissible, which is reasonably calculated to provide a reasonable doubt on the issue of causation, it must be admitted, and the element of causation, with the supported defense, must be submitted to the jury.

■ We now turn to the double jeopardy issue. The State concedes that, in this particular case, separate convictions for manslaughter and assault violate double jeopardy. While the defendant argues that we must accordingly vacate his assault conviction, he also concedes that if we reverse his manslaughter conviction, the State may elect either to retry the whole case or to reinstate the vacated assault conviction. We therefore conditionally vacate the defendant's assault conviction and leave this election to the State. Because the State may elect to try the defendant again for manslaughter, we will address those issues raised by the parties likely to arise on retrial.

■ ■ A core issue at a retrial would certainly be the proper formulation of the supervening cause test. The State argues that the sole cause test embraced by the trial court is the proper one, while the defendant urges that we adopt a test which would relieve a defendant of criminal responsibility when he can establish that, but for gross medical negligence, the victim would not have died. We decline to adopt either test presented by the parties and instead adopt a test requiring that when, within the causal chain required to be proven for conviction of manslaughter, there is evidence of two causal acts, the criminal act alleged and medical malpractice, the causal link is broken only when

the alleged malpractice is the sole substantial cause of the death. If the defendant's alleged criminal act is also a substantial cause, the causal link is established. The malpractice cause is to be considered whether or not the malpractice is characterized as gross negligence.

We note that the purpose of all of these tests is to determine whether medical malpractice on a victim is a supervening cause of the victim's death, thus breaking the causal connection between the beating and the death in the eyes of the law and relieving the defendant of criminal responsibility. *See generally* W. LAFAVE & A. SCOTT, CRIMINAL LAW § 35, at 257–58 (1972). The causal connection at issue is legal causation, or proximate cause, and is a question in manslaughter cases that arises when "the actual result of the defendant's conduct varies . . . from the result which his conduct created a risk of happening." *Id.* § 35, at 251.

In the absence of legislative guidance, many courts have struggled with the question of legal causation in cases such as this, where there was evidence that the victim would have survived had it not been for negligent medical care. The overwhelming majority have attempted to establish bright-line tests for determining the limits of legal causation. As the defendant points out, courts in several jurisdictions have applied the rule that gross medical negligence constitutes a supervening cause if, but for the gross negligence, the victim would have lived. *See, e.g., People v. Calvaresi,* 534 P.2d 316, 319 (Colo. 1975); *People v. Gulliford,* 407 N.E.2d 1094, 1098 (Ill. App. Ct. 1980). The majority of jurisdictions, however, have adopted what has been termed a "sole" cause test, under which malpractice constitutes a supervening cause only if it was the "sole" cause of the death. *See, e.g., State v. Jacobs,* 479 A.2d 226, 230 (Conn. 1984), *cert. denied,* 469 U.S. 1190 (1985); *Baylor v. United States,* 407 A.2d 664, 669 (D.C. 1979). "Sole" cause, a logical misnomer, is generally defined in the negative: Medical negligence is *not* the sole cause of death if the defendant's conduct remains a substantial cause of the death. Some jurisdictions adopting the sole cause test have required that the negligence be "gross," *see, e.g., Baylor,* 407 A.2d at 669, while others have not distinguished between simple and gross negligence; *see, e.g., Wright v. State,* 374 A.2d 824, 828–29 (Del. 1977); *State v. Mitchell,* 302 S.E.2d 265, 268–69 (N.C. Ct. App. 1983). Some courts have distinguished between whether the injury inflicted by the defendant was mortal or not. *See, e.g., Tibbs v. Commonwealth,* 128 S.W. 871, 874 (Ky. 1910). Finally, some courts have distinguished whether the medical negligence was a "coincidence" or a "response" to the defendant's actions. *See* LAFAVE & SCOTT, *supra* § 35, at 257–58.

The issue as to the proper supervening cause test exists because the legislature has defined the crime of manslaughter, as charged here,

very simply: recklessly *causing* the death of another. RSA 630:2, I(b). Although the legislature does not define what it means to "cause" a death, it has provided that "[a]ll provisions of this code shall be construed according to the fair import of their terms and to *promote justice.*" RSA 625:3 (1986) (emphasis added). We hold that where a defendant in a manslaughter case can proffer some evidence of medical malpractice in the causal link between the criminal act and the death of the victim, the issue of causation must be submitted to the jury with appropriate instructions on the supervening cause. Such instructions shall be based on the principle that when such alternate causes are asserted and are supported by some evidence, the medical malpractice will break the causal link and defeat the element of causation only when such malpractice is the sole substantial cause of the death. If the jury finds, beyond a reasonable doubt, that the criminal act remains a substantial cause of the death, the element of causation is proven. No requirement of gross negligence in the medical malpractice shall be required. Consideration of how gross the act of negligence is is not determinative. Rather, the jury should focus on how causal was the act of negligence in relation to the criminal act.

 Next, the defendant contends that he should have been allowed to discover records generated by the hospital's internal review committee. The defendant does not dispute that these records were originally confidential and privileged under RSA 151:13-a (1990), but argues that this privilege was waived when Dr. Butler, who appointed and convened the committee, communicated some of the committee's findings to the State Medical Examiner. RSA 151:13-a, III, however, is explicit that the privilege may only be waived by a "hospital board of directors or trustees," and we held in *In re "K"*, 132 N.H. 4, 17, 561 A.2d 1063, 1072 (1989), that "the obvious negative implication [is] that no one else may do so." Here, there was no evidence that Dr. Butler was even a member of either board, and no evidence of any agency relationship.

The defendant further contends that even if the privilege was not waived, the trial court still erred in refusing to disclose the information after *in camera* review because this information was necessary to his defense and included exculpatory evidence. Upon review of the committee's records, however, we find no error on the part of the trial court.

The defendant raises claims of abuse of trial court discretion on evidentiary matters, both in discovery and at trial. In light of our holding in this case, we do not address these issues, leaving them to the sound discretion of the trial court, in the event of retrial, under the circumstances then existing.

In sum, we reverse the manslaughter conviction and conditionally vacate the assault conviction. The State may elect to try the defendant again on both charges or just for manslaughter, realizing that the defendant may be punished only on one charge, or it may have the assault conviction and sentence reinstated, in which case the manslaughter charge must be dismissed.

*Manslaughter conviction reversed;*
*assault conviction conditionally vacated;*
*remanded.*

All concurred.