Hillsborough-southern judicial district
No. 2000-060

THE STATE OF NEW HAMPSHIRE

v.

HERBERT BARNETT

December 21, 2001

*Philip T. McLaughlin,* attorney general (*Stephen D. Fuller,* attorney, on the brief and orally), for the State.

*Risa Evans,* assistant appellate defender, of Concord, by brief and orally, for the defendant.

NADEAU, J. The defendant, Herbert Barnett, appeals his convictions in Superior Court (*Hollman,* J.) on one count of felonious sexual assault, *see* RSA 632-A:3 (Supp. 2000), and one count of sexual assault, *see* RSA 632-A:4 (1996). We reverse and remand.

The record establishes the following facts. On February 5, 1999, the Nashua police received reports that the defendant had sexually assaulted two juvenile females, ages thirteen and twelve. Contacted by an intermediary, the defendant voluntarily went to the police station at approximately 6:35 p.m. After a few minutes of general conversation, Detective Brooke Lemoine advised the defendant of his *Miranda* rights, *see Miranda v. Arizona,* 384 U.S. 436, 444-45 (1966), but made it clear that he was not under arrest. The defendant executed a valid waiver of his *Miranda* rights at 7:03 p.m.

The defendant initially denied molesting either of the girls. After approximately forty-five minutes of questioning, the defendant admitted that he had purposefully fondled the breast of the twelve-year-old female. The defendant also admitted to purposefully rubbing the clothing covering the genitalia of the thirteen-year-old female. At the request of Detective Lemoine, the defendant agreed to repeat his admissions so they could be recorded on audiotape. The taped interview began at 8:25 p.m. During the taped interview, the defendant repeated his confession. The audio taped statement concluded at 8:45 p.m. After giving his statement, the defendant was placed under arrest.

On appeal, the defendant argues that the trial court erroneously admitted the tape recording of his confession because his prior exculpatory

statements were not also recorded. The defendant contends that the selective recording of his statements violated his due process rights under the State and Federal Constitutions. The defendant also argues that the trial court misinterpreted RSA 632-A:1, IV (1996) (amended 1999), which defines "sexual contact."

We analyze the defendant's constitutional claims first under the New Hampshire Constitution, referencing decisions of the United States Supreme Court and other jurisdictions only for the purpose of aiding our State constitutional analysis. *See State v. Cannuli*, 143 N.H. 149, 151 (1998). Because Part I, Article 15 of the New Hampshire Constitution is at least as protective of the defendant's rights as the Due Process Clause of the Fourteenth Amendment, *cf. Knowles v. Warden, N.H. State Prison*, 140 N.H. 387, 389 (1995), and as the Sixth Amendment, *see State v. Settle*, 132 N.H. 626, 630 (1990), we do not engage in a separate federal analysis. *See State v. Ball*, 124 N.H. 226, 232 (1983).

■ The defendant sought to suppress his recorded statement, in part, because the police recorded only his inculpatory statements. He argues that the selective recording of his interrogation was fundamentally unfair, infringing upon his due process rights. The standard for determining whether a law or procedure violates due process is whether it is fundamentally fair. *See Opinion of the Justices*, 131 N.H. 583, 586 (1989). "A fundamentally unfair adjudicatory procedure is one, for example, that gives a party a significant advantage or places a party in a position of prejudice or allows a party to reap the benefit of his own behavior in placing his opponent at an unmerited and misleading disadvantage." *State v. Winslow*, 140 N.H. 319, 321 (1995).

The interrogation of the defendant conducted by Detective Lemoine lasted approximately one hour and forty-two minutes. Of that, only the last twenty minutes of the interrogation, precisely when the defendant inculpated himself, were recorded. The defendant contends that the inculpatory recording was out of context and not consistent with the remainder of the interrogation and therefore misleading. The defendant argues that he was confronted with the State's best evidence, a recorded confession, and placed at an unmerited and misleading disadvantage, only able to offer testimonial evidence of his exculpatory statements.

■ Only one state supreme court has held, independent of a legislative directive, that the due process clause of its state constitution requires custodial interrogations be electronically recorded. In *Stephan v. State*, 711 P.2d 1156, 1159-60 (Alaska 1985), the Alaska Supreme Court held that an unexcused failure to record a custodial interrogation conducted in a

place of detention violated a suspect's right to due process under the Alaska Constitution, rendering any statement subsequently obtained inadmissible. The Alaska Supreme Court elevated the taping requirement to a constitutional right, however, only after law enforcement officials failed to follow the rule it had established five years earlier. *See id.* at 1159; *see also Mallot v. State*, 608 P.2d 737, 743 n. 5 (Alaska 1980). In fact, since 1985, no state supreme court, absent legislative direction, has held that due process requires custodial interrogations be recorded. *See, e.g., State v. Buzzell*, 617 A.2d 1016, 1018 (Me. 1992). Consistent with the overwhelming majority of States that have addressed this issue, we hold that due process does not require the recording of custodial interrogations.

In rejecting *Stephan*, however, we have yet to resolve the inequities inherent in selectively recording custodial interrogations. For guidance we look to *Minnesota v. Scales*, 518 N.W.2d 587 (Minn. 1994), in which the Supreme Court of Minnesota declined to find under the Minnesota Constitution that a criminal suspect has a due process right to have his or her custodial interrogation recorded. *Id.* at 592. Instead, the court exercised its "supervisory power to insure the fair administration of justice" by requiring that all custodial interrogations be recorded, "including any information about rights" and "any waiver of those rights." *Id.* The court predicated the suppression of all statements made during custodial interrogation upon a case-by-case determination that the violation of the recording requirement was "substantial." *Id.* We too elect to exercise supervisory jurisdiction over our trial courts to ensure the fair administration of justice. *See Hopps v. State Bd. of Parole*, 127 N.H. 133, 140 (1985); RSA 490:4 (1997).

Today we steer a narrow course between Alaska and Minnesota. In establishing a recording rule, we are mindful of the benefits provided by the clear and definite rule of suppression utilized in *Stephan*. Conversely, like the *Scales* court, we believe that a recording rule is more properly founded upon our supervisory jurisdiction. We believe both *Stephan* and *Scales*, however, by excluding all statements made during unrecorded custodial interrogations (absent certain narrow exceptions), go too far. Our primary motive in establishing a recording rule is to ensure the fair and equitable presentation of evidence at trial. "A recording speaks for itself literally on questions concerning what was said and in what manner." *Com. v. Diaz*, 661 N.E.2d 1326, 1328-29 (Mass. 1996). Listening to a defendant be inculpated by his or her own voice has a persuasive power unrivaled by contradictory testimonial evidence.

To avoid the inequity inherent in admitting into evidence the selective recording of a post-*Miranda* interrogation, we establish the

following rule: In order to admit into evidence the taped recording of an interrogation, which occurs after *Miranda* rights are given, the recording must be complete. The police need not tape the administration of a defendant's *Miranda* rights or the defendant's subsequent waiver of those rights. However, immediately following the valid waiver of a defendant's *Miranda* rights, a tape recorded interrogation will not be admitted into evidence unless the statement is recorded in its entirety. Unlike *Stephan* and *Scales*, failure to record the complete interrogation will not result in the wholesale exclusion of the interrogation. *See Stephan*, 711 P.2d at 1163; *see also Scales*, 518 N.W.2d at 592. Rather, where the incomplete recording of an interrogation results in the exclusion of the tape recording itself, evidence gathered during the interrogation may still be admitted in alternative forms, subject to the usual rules of evidence. In light of our ruling, admission of the incomplete recording of the defendant's interrogation is not permissible. Therefore, the defendant's convictions are reversed and the matter is remanded.

The defendant also argues that the trial court misinterpreted RSA 632-A:1, IV, resulting in his conviction under RSA 632-A:4. At the time of the charged offenses, "sexual contact" was defined in part as

> the intentional touching of the victim's or actor's sexual or intimate parts, including breasts and buttocks, and the intentional touching of the victim's or actor's clothing covering the immediate area of the victim's or actor's sexual or intimate parts.

RSA 632-A:1, IV (1996). At trial, the defendant moved to dismiss the sexual assault charge, arguing that the State had failed to prove "sexual contact" because the evidence indicated that he had touched the thirteen-year-old female's intimate parts through one or more blankets. The trial court denied the motion.

 The defendant contends that RSA 632-A:1, IV, as then written, did not include touching through blankets in its definition of "sexual contact." We disagree. The rule that penal statutes are to be strictly construed does not apply to the Criminal Code. All provisions of the code shall be construed according to the fair import of their terms and to promote justice. RSA 625:3 (1996). "Clothing" is defined, in part, as "covering for the human body or garments in general." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 428 (unabridged ed. 1961). To argue that the legislature intended to prohibit the sexual assault of a child clothed during her waking hours, but did not intend to extend those protections to that

same child when she later rests under a blanket, denies fair import to the terms of the statute, fails to promote justice and defies logic.

Neither are we persuaded that a post-offense amendment to RSA 632-A:1, IV is dispositive. *See* RSA 632-A:1, IV (Supp. 2000). The definition of "sexual contact" was changed in 1999 to include "intentional touching whether directly, through clothing, or otherwise." RSA 632-A:1, IV. The defendant contends that by adding the word "otherwise," the legislature expanded the statute's reach to include the sort of contact presently at issue, conversely implying that as originally worded, the term "clothing" in RSA 632-A:1, IV did not encompass blankets.

We disagree. We are the final arbiter of the legislature's intent as expressed in the words of the statute considered as a whole. *See Pope v. Town of Hinsdale*, 137 N.H. 233, 237 (1993). In determining intent, we draw inferences concerning a statute's meaning from its composition and structure. We ascribe to statutory words and phrases their usual and common meaning, unless the statute itself suggests otherwise. *See Stevens v. Town of Goshen*, 141 N.H. 219, 221 (1996). The amendment in question can reasonably be construed as a clarification of the original statute rather than a modification. Accordingly, the trial court properly denied the defendant's motion to dismiss.

■ The defendant also argues that the evidence was insufficient to prove that he engaged in sexual contact because he touched the thirteen-year-old female through several layers of blankets. In light of the foregoing analysis, we reject this argument.

■ Finally, the defendant argues that the trial court invaded the exclusive fact finding province of the jury when it instructed that "clothes" could also include blankets. We disagree. Since the interpretation of statutory language is a question of law, it is not for the jury to decide whether "clothing," as used in RSA 632-A:1, IV, may also include blankets.

*Reversed and remanded.*

BROCK, C.J., and BRODERICK, J., concurred.