Hillsborough-southern judicial district
No. 2001-259

# THE STATE OF NEW HAMPSHIRE

v.

## TIMOTHY DUPONT

Argued: September 11, 2002
Opinion Issued: January 24, 2003

*Philip T. McLaughlin*, attorney general (*Nicholas Cort*, assistant attorney general, on the brief and orally), for the State.

*Law Office of Paul J. Haley*, of Hillsboro (*Paul J. Haley* on the brief and orally, for the defendant).

BROCK, C. J. The defendant, Timothy Dupont, was convicted after a jury trial in Superior Court (*Groff*, J.) of sixty-nine counts of felonious sexual assault. *See* RSA 632-A:3, III (1986). The indictments alleged that the defendant committed three different felonious sexual acts against his stepdaughter on a monthly basis over twenty-three months from 1987 through 1989. The defendant appeals his convictions on a number of grounds. We affirm.

The relevant facts follow. The defendant moved to the Somerset apartments in Nashua with his wife and her two children around 1987. The victim was the defendant's stepdaughter. The victim testified that during the two years that the family lived at the Somerset apartments, the defendant assaulted her "at least once a month." The defendant would enter her bedroom at night, and while she pretended to sleep, would remove her clothing. He then "touched [her] breast and [her] vagina and . . . would have [her] touching his penis."

The victim did not tell anyone about the assaults for many years. She testified that this was partly because she was afraid, and partly because the defendant was the leader of a small religious group. She also testified that the defendant told her that her mother would be angry with her if she found out about the abuse. Furthermore, once in 1993, the defendant held a gun to his own head and told the victim how sorry he was, that he could go to jail if she reported him, and "how he would kill himself if [she] wanted him to."

The victim testified that when she went to college in the fall of 1996, the defendant wrote her letters and insisted that she call him every night. He became upset when she did not call one night, and wrote her a card that accused her of thinking that his feelings for her were "funny," and saying

that he would not share those feelings with her any more. He also wrote her a letter asking "forgiveness for my bad."

The victim moved out of her parents' house in 1997 or 1998. In 1998, she told her boyfriend, who was later to become her husband, that the defendant had molested her. She later reported the molestation to the police.

At trial, police officer Scott Howe testified that he, another Nashua police officer, and a New Hampshire State Trooper went to the defendant's residence to question and arrest the defendant. The police officers spoke with the defendant, indicated that they wished to inquire about "an incident that occurred in Nashua," and asked him to drive to the police station in Newport so that they could question him about it. When they arrived at the station, the police escorted the defendant to an interview room, where they advised him of his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436 (1966).

After the defendant signed a form waiving his *Miranda* rights, the police began interrogating him about his relationship with the victim. During the interrogation, the defendant admitted to having had sexual contact with the victim, and stated that he was confused about his relationship with her and treated her more as a girlfriend than as a daughter. About twenty minutes after the interrogation began, the police advised the defendant that they would be taking an audiotaped statement. He agreed to be audiotaped, and the interrogation continued.

After recording the defendant's statement, the police told the defendant that he was under arrest and would be transported back to Nashua. During the ride to Nashua, the police inquired of the defendant whether he had penetrated the victim during the sexual assaults. The defendant initially denied penetration, but later, while at the Nashua police station, admitted that he might have accidentally pushed his fingers into the victim's vagina. At that point, the police took the defendant to an interview room so that they could record that statement as well. The taped interviews were played for the jury at trial.

## I. Tape-Recorded Confession

The defendant argues that the trial court erred in admitting the tape-recorded confession, where parts of the same interrogation were not recorded. The State argues that even if the trial court erred in admitting the partially recorded interview, such error was harmless.

In order "[t]o avoid the inequity inherent in admitting into evidence the selective recording of a post-*Miranda* interrogation," we recently set forth the following rule:

> In order to admit into evidence the taped recording of an interrogation, which occurs after *Miranda* rights are given, the recording must be complete. The police need not tape the administration of a defendant's *Miranda* rights or the defendant's subsequent waiver of those rights. However, immediately following the valid waiver of a defendant's *Miranda* rights, a tape recorded interrogation will not be admitted into evidence unless the statement is recorded in its entirety.

*State v. Barnett*, 147 N.H. 334, 337-38 (2001). We made clear in *Barnett* that our decision was based, not upon due process grounds, but upon our supervisory authority over our trial courts to ensure the fair administration of justice. *Id.* at 337.

In the present case, the defendant was read his *Miranda* rights and waived them. The police then obtained a confession. However, it was only after they had obtained the defendant's statement that they audiotaped his confession. Because the defendant's statement was not recorded in its entirety, we agree with the defendant that the trial court erred when it allowed the jury to hear the tape recorded confession. We now consider whether the erroneous admission of a partially recorded interrogation should be subject to harmless error analysis, and, if so, whether the error in this case was harmless.

It is well settled that the erroneous admission of evidence is harmless only if it is determined, beyond a reasonable doubt, that the verdict was not affected by the admission. *State v. Skidmore*, 138 N.H. 201, 203 (1993). In making this determination, we consider the alternative evidence presented at trial as well as the character of the inadmissible evidence itself. *State v. Smith*, 141 N.H. 271, 278 (1996).

> The harmless-error doctrine recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error.

*Rose v. Clark*, 478 U.S. 570, 577 (1986) (citations and quotation omitted).

There are instances, however, when the erroneous admission of evidence is so prejudicial that reversal is required without regard to the evidence in a particular case. *State v. Williams*, 133 N.H. 631, 634 (1990). In *Williams*, we explained that the United States Supreme Court, while rejecting a *per se* rule that the harmless error doctrine does not apply to constitutional

errors at trial, stated that "only such constitutional errors as necessarily render a trial fundamentally unfair require reversal without regard to the evidence in the particular case." *Id.* (quotation and ellipsis omitted). "A fundamentally unfair adjudicatory procedure is one, for example, that gives a party a significant advantage or places a party in a position of prejudice or allows a party to reap the benefit of his own behavior in placing his opponent at an unmerited and misleading disadvantage." *State v. Winslow*, 140 N.H. 319, 321 (1995) (quotation omitted).

Errors that partially or completely deny a defendant the right to the basic trial process, such as the introduction of a coerced confession, the complete denial of a defendant's right to counsel, or adjudication by a biased judge, rise to the level of fundamental unfairness, thereby obviating consideration of the harmless error doctrine. *See Williams*, 133 N.H. at 634; *see also State v. Soucy*, 139 N.H. 349, 352 (1995). Generally, however, "if the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis." *Rose*, 478 U.S. at 579.

█ As we have noted, the rule we announced in *Barnett* derives not from the constitution, but from the exercise of our supervisory authority. Hence, we did not hold that the erroneous admission of a partially recorded interrogation violates due process or necessarily renders a defendant's trial fundamentally unfair. It is therefore subject to harmless error analysis. *See Williams*, 133 N.H. at 634.

For us to hold that an error was harmless, the State must prove beyond a reasonable doubt that the error did not affect the verdict. *State v. Etienne*, 146 N.H. 115, 118 (2001). "An error may be harmless beyond a reasonable doubt if the alternative evidence of the defendant's guilt is of an overwhelming nature, quantity, or weight, and if the inadmissible evidence is merely cumulative or inconsequential in relation to the strength of the State's evidence of guilt." *State v. Pelkey*, 145 N.H. 133, 137 (2000) (quotation omitted).

We conclude, based upon a review of the record, that the harm to the defendant that *Barnett* seeks to prevent is not present in this case, that the alternative evidence of the defendant's guilt is of an overwhelming nature, and that the inadmissible evidence was inconsequential in relation to the strength of the evidence of guilt.

The purpose of the rule we adopted in *Barnett* is to prevent the defendant from suffering the unmerited and misleading disadvantage of being able to rebut the recorded inculpatory portions of his statement with only testimonial evidence of his exculpatory statements. *See Barnett*, 147 N.H. at 336-38. It was in this context that we stated that "[l]istening to a

defendant be inculpated by his or her own voice has a persuasive power unrivaled by *contradictory* testimonial evidence." *Id.* at 337 (emphasis added).

Where, as in this case, there is no evidence that the defendant made exculpatory or otherwise inconsistent statements during the unrecorded portion of his statements to the police, and the victim's testimony that the defendant had committed all of the acts charged was essentially uncontradicted, the defendant did not suffer the disadvantage that *Barnett* seeks to prevent.

The victim's testimony was neither impeached nor undermined by conflicting substantive evidence, and was supported by the testimony of Officers Howe and Hammond. Officer Howe testified at trial that the defendant had admitted having sexual contact with the victim, and stated that "he was confused about his relationship and treated her more as a girlfriend than a daughter." Officer Hammond confirmed that the defendant admitted that he had sexually assaulted the victim. The defendant's taped confession was merely cumulative of this evidence. Under these circumstances, we conclude that it is clear beyond a reasonable doubt that the defendant would have been convicted even if the recording had been excluded. Therefore, introduction of the partially recorded interrogation was harmless.

## II. Sufficiency of the Indictments

Prior to trial, the defendant moved to dismiss the indictments or, in the alternative, for a bill of particulars. He argued that the indictments were not specific enough to allow him to prepare his defense because they are distinguishable from each other only by the allegation that the offenses occurred in a different month during the time period from April 1987 to February 1989. The defendant also argued that the indictments failed to guarantee jury unanimity. Following a hearing, the trial court denied the defendant's motion. The defendant argues on appeal that this was error. We disagree.

Part I, Article 15 of the New Hampshire Constitution states that "[n]o subject shall be held to answer for any crime, or offense, until the same is fully and plainly, substantially and formally, described to him." To meet this constitutional standard, an "indictment must be specific enough to ensure notice to the defendant, assurance against double jeopardy, and the reliability of [a] unanimous jury verdict." *State v. Patch*, 135 N.H. 127, 128 (1991). "A bill of particulars can provide such protection. A decision concerning its issuance is within the discretion of the trial court and will not be disturbed unless the defendant can demonstrate that the ruling was

clearly untenable or unreasonable to the prejudice of the defendant's case." *State v. Woodard*, 146 N.H. 221, 227 (2001).

■ The defendant argues on appeal that the trial court's decision not to dismiss the indictments or order a bill of particulars violated the defendant's right to due process because the indictments do not contain enough facts to warn him of the specific acts which constitute the charges against him. We disagree. The indictments were specific enough to ensure notice to the defendant sufficient to allow him to prepare for trial. While the State conceded below that it was unable to provide any more exact date or time, or any greater specificity of location other than that set forth in the indictment, we agree with the trial court that greater specificity was not constitutionally required. As the trial court noted, time is not an element of the sexual assault crimes alleged in the indictment. Furthermore, "the State may not be required over objection to furnish a bill of particulars specifying an exact date and time for the commission of the offense, unless this can be shown to be necessary for the preparation of a defense or to preclude a later unconstitutional prosecution." *State v. Steer*, 128 N.H. 490, 494 (1986) (quotation omitted). Although the defendant argued below that an alibi defense would be frustrated by the lack of specificity, the defendant did not articulate a basis for any alibi defense for any of the charges. Under these circumstances, we agree with the trial court that the defendant failed to demonstrate that he was prejudiced in his ability to prepare a defense.

■ The defendant also argues that the State essentially charged the defendant with a "course of conduct" offense in violation of *Patch*. We disagree. In *Patch*, we held that an indictment was unconstitutionally duplicitous because it charged a single count of felonious sexual assault, but alleged a "course of conduct" involving several incidents in a single time period. *Patch*, 135 N.H. at 128-29. We noted that because "[e]vidence of more than one incident was admitted at trial without any indication as to which incident the jury was to focus upon in determining guilt," it was "possible that not all of the jurors were considering the same act when they voted unanimously to convict." *Id.* at 129. Such a danger did not exist in this case because the State did exactly what *Patch* requires; it "brought several indictments, each alleging a specific incident, and consolidated them for trial." *Patch*, 135 N.H. at 129. The allegation of a single incident in each of a number of specific months both ensured unanimity and precluded any danger of double jeopardy.

*III. Sufficiency of the Evidence*

We turn now to the defendant's challenge to the sufficiency of the evidence. "To prevail on a challenge to the sufficiency of the evidence, the defendant must demonstrate that no rational trier of fact, evaluating all of the evidence and its reasonable inferences in the light most favorable to the State, could conclude beyond a reasonable doubt that he had committed the charged crime." *State v. Hammell*, 147 N.H. 313, 319 (2001).

The indictments allege that the defendant committed three different felonious sexual acts against his stepdaughter on a monthly basis over twenty-three months from 1987 through 1989. Twenty-three indictments allege that the defendant had the victim masturbate his penis, twenty-three allege that the defendant placed his hand on the victim's vagina, and the remaining twenty-three allege that the defendant rubbed the victim's breasts. The victim testified that at least once a month while she and the defendant lived at the Somerset apartments, the defendant would touch her breasts and her vagina, and would have her masturbate his penis. She testified that the three assaults would usually occur as part of a single series of events.

In order to establish that the three acts occurred at least once a month from April 1987 through February 1989, the State first inquired whether the defendant had the victim masturbate his penis in April 1987, whether he touched her breast in April 1987, and whether he rubbed her vagina in April 1987. After she answered, "yes," to each of these questions, the State inquired, "When was the next time that the acts, as you've described to the jury occurred?" The victim answered, "In May of 1987." The prosecutor then asked the same question, to which the victim answered, "In June of '87." Similar questioning occurred until the victim had testified that the defendant committed the same acts at least once in every month from April 1987 to February 1989.

In light of the evidence presented at trial, we cannot say that no rational trier of fact could conclude beyond a reasonable doubt that the defendant committed the charged crimes. We disagree with the defendant that he was entitled to have the victim explain to the jury in greater detail what happened each month concerning the charge in each indictment. The defendant cites no authority for the proposition that a victim testifying to numerous similar assaults must describe each one with more specificity than was done here, and we have been unable to find any.

Furthermore, because the defendant has not set forth an argument to support his assertion that "based on Part I, Article XIV, of the New Hampshire Constitution, the defendant must be protected from double

jeopardy and under Part I, Article XV, of the New Hampshire Constitution, the defendant has been denied due process of law," we decline to address those issues. *See State v. Chick,* 141 N.H. 503, 504 (1996); *Keenan v. Fearon,* 130 N.H. 494, 499 (1988) ("off-hand" invocations of constitutional rights supported by neither argument nor authority warrant no extended consideration).

## IV. Denial of Mistrial

The defendant was originally indicted on 106 counts of either felonious or aggravated felonious sexual assault. The defendant moved to sever the indictments for trial, and to dismiss them. The superior court dismissed some of the indictments as multiplicitous and granted the motion to sever. However, the defendant later withdrew his motion to sever, and agreed to proceed to trial on all the remaining indictments. Two of the indictments were dismissed during the trial, after evidence relevant to the indictments had been presented to the jury.

One of the indictments dismissed during trial charged the defendant with placing his hand on the victim's vagina on or between January 1, 1983, and December 31, 1985. The victim testified at trial as to the specifics of the incident. However, the trial court concluded that the indictment was defective because it failed to allege an element of the crime. The second indictment charged the defendant with placing his fingers into the victim's vaginal opening in November or December 1992. The victim testified at trial that the defendant had inserted his fingers into her vagina "somewhere around" 1991. After reviewing the evidence presented at trial and concluding that no reasonable jury could find beyond a reasonable doubt that the offense occurred between November 1 and December 31, 1992, the court granted the defendant's motion to dismiss the indictment.

At the close of the evidence, the defendant moved for a mistrial, arguing that the jury heard evidence of uncharged misconduct, which prejudiced him. The trial court denied the motion for a mistrial, but granted the defendant's request for a curative instruction. The trial court instructed the jury that the two indictments had been dismissed, and that

> evidence [in regard to those indictments] is stricken from the record and may not be considered by you in deciding your verdict on the remaining Indictments. Testimony you heard about these two (2) particular Indictments has no relevance to any of the other Indictments and you should put it out of your mind, ignore it and you may not consider it any further in this case.

On appeal, the defendant contends: (1) that the victim's testimony regarding the two indictments was so prejudicial to the defendant that no

curative instruction could undo the harm; and (2) the trial court erred in denying the defense request for a mistrial by finding that the defendant had waived any issues of prejudice caused by the consolidation of charges when the defendant withdrew his motion to sever.

■ "The basis for granting a mistrial is the existence of some circumstances which indicates that justice may not be done if the trial continues to verdict." *State v. Booton*, 114 N.H. 750, 757 (1974), *cert. denied*, 421 U.S. 919 (1975). "To justify a mistrial, prejudicial testimony must be more than inadmissible, it must constitute an irreparable injustice that cannot be cured by jury instructions." *State v. Ellison*, 135 N.H. 1, 4 (1991) (quotations omitted). The trial court is granted broad discretion to decide whether a mistrial or other remedial action is necessary because it is in the best position to measure prejudicial impact. *Id.* Absent an unsustainable exercise of discretion, we will not overturn the trial court's decision not to grant a mistrial. *See State v. Collins*, 138 N.H. 217, 219 (1994); *cf. State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining "unsustainable exercise of discretion" standard).

■ In ruling that the defendant was not prejudiced, the trial court first noted that the disputed testimony had been admitted because the defendant had withdrawn his motion to sever. The court's consideration of this fact in making a prejudice determination was not improper. In *Collins*, the defendant was indicted on two similar charges. *Collins*, 138 N.H. at 218. One of the charges was dismissed at the conclusion of the State's case, and the jury convicted the defendant on the second indictment. *Id.* On appeal, we rejected the defendant's argument that the jury's knowledge of the dismissed indictment created unfair prejudice. *Id.* In so holding, we stated:

> The defendant's contention that consideration by the jury of the one remaining indictment was improper is disingenuous; he apparently saw no inherent prejudice in the two indictments proceeding to the jury. The defendant does not argue that the trial court should have severed the two indictments, rather than try them together. Nor does the record indicate that the defendant moved to have the indictments severed prior to trial.

*Id.* at 220. The defendant in the present case expressly withdrew his motion to sever after it had been granted. Under these circumstances, his claim that testimony relating to the dismissed indictment was inherently prejudicial is suspect.

The trial court also concluded that the defendant was not prejudiced by the admission of the 1991 and the 1983 testimony, in light of the fact that

there remained before the jury sixty-nine indictments charging the same type of conduct. We agree. The evidence of the defendant's guilt on the sixty-nine charges was so overwhelming that the prejudicial testimony did not create an irreparable injustice that could not be cured by the jury instruction given in this case to ignore evidence relating to the two dismissed indictments.

## V. Evidence of Card Game

 The defendant argues that the trial court erred in allowing the State to introduce evidence that the defendant played a card game with the victim in which he caused her to disrobe, and then touched her vagina with his hand. We disagree.

The testimony to which the defendant refers was relevant to the indictment that alleged a single incident of sexual contact occurring between January 1, 1983, and December 31, 1985. Because the testimony was relevant to a charged crime, it was not evidence of an uncharged bad act. Therefore, New Hampshire Rule of Evidence 404(b) does not apply, see State v. West, 146 N.H. 752, 753 (2001), and the trial court did not err in admitting the evidence. The fact that the trial court dismissed the indictment after the State had presented its case does not alter our conclusion. As discussed above, the trial court did not err when it instructed the jury to disregard the evidence associated with the dismissed indictment and held that admission of the evidence was not grounds for a mistrial.

## VI. Evidence of Defendant's Statements to the Victim

Prior to trial, the defendant moved *in limine* to exclude certain statements he made to the victim. In particular, he moved to exclude evidence: (1) of an incident during which he threatened to harm himself with a gun; (2) that he referred to himself as the "Son of God"; (3) that he told the victim that she might one day be his wife; (4) that he told the victim that "if the alleged molestation were found out that the complainant's mother would hate him[ ] and be mad at the [victim]"; (5) that he told the victim that when she got married she would tell her husband about the abuse; and (6) that he contacted the victim on a daily basis while she was away at college. The trial court denied each of the motions, and the victim testified about each of the incidents. On appeal, the defendant challenges the admission of this prejudicial evidence.

The decision to admit or exclude evidence is within the discretion of the trial court. State v. Hopkins, 136 N.H. 272, 275 (1992). This court reviews the admission of a witness's testimony under an unsustainable exercise of

discretion standard. *State v. Kulas*, 145 N.H. 246, 248 (2000); *see State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining "unsustainable exercise of discretion" standard). To demonstrate that the trial court's exercise of discretion is unsustainable, the defendant must show that the trial court's rulings were clearly untenable or unreasonable to the prejudice of his case. *Lambert*, 147 N.H. at 296; *Kulas*, 145 N.H. at 248.

Although the basis for the defendant's argument in his brief is unclear, the record suggests that prior to trial, the defendant moved to exclude some of the statements as not relevant, N.H. R. Ev. 402, or, if relevant, more prejudicial than probative, N.H. R. Ev. 403, and at least one (the suicide threat) as evidence of a prior bad act, N.H. R. Ev. 404(b).

■■■ We first consider the defendant's threat to shoot himself if the victim ever told anyone about the abuse. According to the defendant, the suicide threat was a prior bad act and inadmissible under New Hampshire Rule of Evidence 404(b). Under Rule 404(b), "evidence of other bad acts is inadmissible unless it is relevant for a purpose other than to prove the defendant's character or disposition, there is clear proof the defendant committed the other acts, and the prejudice to the defendant does not substantially outweigh the probative value of the evidence." *State v. Dukette*, 145 N.H. 226, 229 (2000) (quotation omitted).

Without deciding whether the victim's testimony about the suicide threat was evidence of a bad act, the trial court concluded that it was relevant as an admission of guilt and to the victim's failure to disclose the abuse, and that its probative value was not substantially outweighed by the prejudice to the defendant. The trial court also concluded that the proof that the defendant committed the act was clear, because he admitted it in his interview with the police. We cannot say that the trial court's decision to admit the evidence was unreasonable or untenable to the prejudice of the defendant's case. We disagree with the defendant that the trial court erred in admitting the evidence because the defendant did not try to impeach the victim on the grounds that she waited many years before reporting the abuse. We recently rejected a rule barring the State from introducing evidence showing why the victim delayed disclosure unless the defendant first tried to impeach her on that basis. *See Woodard*, 146 N.H. at 226.

■■■ We next consider the defendant's reference to himself as the "Son of God" and his other religious statements. The trial court reasoned that the statements were not prior bad acts because they were contemporaneous with the crimes alleged in the indictments, were relevant to the defendant's intent, and that the probative value of the evidence was not outweighed by the danger of prejudice to the defendant. We cannot

say that such a finding was untenable or unreasonable to the prejudice of the defendant's case.

■ We turn now to the defendant's statement to the victim that she would someday be his wife, and evidence of the defendant's conduct toward the victim after college. The trial court reasoned that the evidence was relevant to the defendant's state of mind and his relationship with the victim, and that such relevancy was not outweighed by the danger of unfair prejudice to the defendant. We cannot say that such a finding was untenable or unreasonable to the prejudice of the defendant's case.

■ Finally, we consider the defendant's statements to the victim that her mother would be angry at her if she found out about the abuse and that one day the victim would tell her husband about the abuse. The trial court reasoned that the statements were relevant as admissions, and the statement regarding the victim's mother was also relevant because it explained why the victim did not report the abuse. The trial court also presumably found that the relevancy of the evidence was not outweighed by the danger of unfair prejudice to the defendant. We cannot say that such findings were untenable or unreasonable to the prejudice of the defendant's case.

All issues raised in the notice of appeal, but not briefed, are deemed waived. *See State v. Mountjoy*, 142 N.H. 648, 652 (1998).

*Affirmed.*

NADEAU and DALIANIS, JJ., concurred.