Hillsborough-southern judicial district
No. 2005-071

## THE STATE OF NEW HAMPSHIRE

v.

## KARL MATEY

Argued: January 11, 2006
Opinion Issued: February 15, 2006

*Kelly A. Ayotte*, attorney general (*Stephen D. Fuller*, senior assistant attorney general, and *Thomas D. Ralph*, attorney, on the brief, and *Mr. Ralph* orally), for the State.

*David M. Rothstein*, deputy chief appellate defender, of Concord, on the brief and orally, for the defendant.

DUGGAN, J. The defendant, Karl Matey, appeals a ruling of the Superior Court (*Lynn*, C.J.) finding him chargeable on multiple probation violations. On appeal, he contends that the trial court erred in extending his original term of probation, and by admitting evidence of a statement allegedly obtained in violation of his right to counsel. We vacate the defendant's sentence only to the extent that the defendant's term of probation exceeds five years, and remand to the trial court for resentencing in accordance with this opinion. In all other respects, we affirm.

The trial court could have found the following facts. On May 2, 2003, the defendant entered a plea of guilty to one count of possession of a controlled drug. *See* RSA 318-B:2 (2004). The Trial Court (*Hicks*, J.) sentenced the defendant to three and one-half to seven years in State Prison, which sentence was deferred for two years. The defendant was also placed on probation for four years, beginning immediately. The trial court added in its sentencing order that "*[v]iolation of probation or any of the terms of this sentence may result in revocation of probation and imposition of any sentence within the legal limits for the underlying offense.*"

While on probation, the defendant was jointly supervised by a New Hampshire probation officer, Trisha Ford, and a Massachusetts probation officer, Patricia Gleason. On June 11, 2003, the defendant failed a drug test in New Hampshire, testing positive for marijuana. He subsequently failed drug tests in Massachusetts on four occasions, testing positive for marijuana on October 14, 2003, May 18, 2004, and August 24, 2004, and for both marijuana and cocaine on September 8, 2004. Whenever the defendant failed a drug test, Gleason discussed his drug use with him and "he was very forthcoming and [admitted] that he had some problems. He had difficulty sleeping. He used marijuana to help." Specifically, on July 13, 2004, the defendant admitted to having smoked marijuana a few weeks earlier.

On September 20, 2004, Ford filed a Violation of Probation alleging that the defendant, among other things, violated Rule 10 of the Rules of Probation by failing drug tests on five occasions and admitting to smoking marijuana on one occasion. The defendant was appointed counsel for the probation violations and was ordered to appear for a hearing on December 7, 2004.

Upon agreement of the parties, the December 7, 2004 hearing was continued. The defendant, who was late for the hearing, arrived only after the trial court had granted the continuance. Later that day, Ford called the defendant to find out why he had not been in court that morning, to ask him about his recent drug use, and to order him to report to her in New Hampshire on December 9, 2004. During this telephone conversation, Ford asked the defendant about a December 1 drug test, which was not the subject of the Violation of Probation. The defendant admitted that, around the time of the December 1 drug test, he had been smoking marijuana and snorting cocaine.

On December 9, 2004, the defendant failed to report to Ford as directed. On December 13, 2004, Ford filed a Supplemental Violation of Probation, alleging that the defendant failed to report to probation as directed on December 9 and that he had admitted to smoking marijuana and snorting cocaine.

The Trial Court (*Lynn*, C.J.) held a consolidated hearing on the Violation of Probation and Supplemental Violation of Probation on January 4 and 10, 2005. The court found the defendant chargeable on several counts, including the counts in the Violation of Probation and the Supplemental Violation of Probation alleging that the defendant used controlled substances in violation of Rule 10. The court sentenced the defendant to serve twelve months in the House of Correction, and three years of probation upon release. The court also ordered that the balance of the defendant's prison term be suspended upon his admission into a residential drug treatment program and the Nashua Academy Program.

On appeal, the defendant argues that the trial court erred by extending his initial term of probation and by admitting into evidence at the probation violation hearing his December 7, 2004 admission to Ford, which he contends was obtained in violation of his right to counsel. We address each argument in turn.

*I. Extension of Probation*

The defendant argues that the trial court, after finding him in violation of his probation, illegally extended his term of probation beyond the four years initially imposed. The defendant concedes, however, that he failed to object to the extension of the term of probation at the time it was imposed. Therefore, the issue has not been preserved for our review. *See State v. Blackmer*, 149 N.H. 47, 48 (2003). Nevertheless, the defendant argues that we should review his sentence under the plain error rule. *See* SUP. CT. R. 16-A.

 The plain error rule allows us to consider errors not brought to the attention of the trial court. *Id.* However, "[t]he rule should be used sparingly, its use limited to those circumstances in which a miscarriage of justice would otherwise result." *State v. MacInnes*, 151 N.H. 732, 736-37 (2005). For us to find error under the rule: "(1) there must be an error; (2) the error must be plain; (3) the error must affect substantial rights; and (4) the error must seriously affect the fairness, integrity or public reputation of judicial proceedings." *Id.* at 737.

At the time of sentencing on the probation violation, the defendant had already served one year, eight months, and eight days of the initial four-year term of probation. The defendant represented at oral argument that he was then incarcerated for nine months before he was released in September 2005, at which time he commenced serving the three-year term of probation imposed by the court for the probation violation. Thus, at the earliest, the defendant will complete his term of probation in September 2008, which is one year and four months later than he had expected when he was originally sentenced on the underlying charges.

 The defendant first contends that his actual term of probation is approximately five years and four months, which extends his probation beyond the maximum five-year term of probation permitted by statute for his crime, a class B felony. *See* RSA 651:2, V(a) (Supp. 2005). The State argues that the term of probation was effectively tolled for the nine-month period during which the defendant was incarcerated, and thus his actual term of probation is only four years, eight months, and eight days. The defendant argues that probation continued throughout the nine-month period during which he was incarcerated. Neither the defendant nor the State has pointed to anything in the record to support their positions. However, the State does concede that, if the term of probation exceeds the five-year maximum allowable under RSA 651:2, V(a), it is illegal and plain error. In light of this concession, we hold that, to the extent that the trial court sentenced the defendant to a term of probation exceeding five years, that sentence was error, and the error was plainly evident from the plain language of RSA 651:2, V(a). Because the sentence is illegal to the extent that it imposes a term of probation exceeding five years, the third and fourth elements of the plain error rule have been satisfied. *See State v. Taylor*, 152 N.H. 719, 721 (2005).

The defendant next argues that the trial court also committed plain error by extending his probation beyond the four years initially imposed at sentencing on the underlying charge, even if that extension ultimately results in the defendant serving no more than five years probation. The State, citing *State v. White*, 131 N.H. 555 (1989), argues that the extension

of the defendant's term of probation is permissible so long as it is within the five-year limit prescribed by the legislature for the underlying crime. In response, the defendant contends that the State's reliance on *White* is misplaced, and instead argues that the extension of probation is tantamount to an impermissible increase in the time period during which the maximum sentence for the defendant's underlying crime may be "called forward," citing *State v. Ingerson*, 130 N.H. 112 (1987).

In *White*, 131 N.H. at 557-58, 559-60, we held that, where a defendant violates the terms of his probation, the imposition of a term of imprisonment within the statutory limits for the underlying offense is not illegal, even where the original sentencing order does not contain a suspended sentence. The defendant in that case had entered a plea of guilty to a class B felony and the trial court had sentenced him to twelve months incarceration and two years of probation to begin upon his release. *Id.* at 556, 558. After the defendant completed his term of incarceration and began his term of probation, the trial court found him chargeable on several probation violations and revoked his probation, sentencing him to incarceration for two and one-half to five years. *Id.* at 557.

However, unlike the defendant in this case, the defendant in *White* did not receive an additional term of probation. Thus, *White* did not address whether a defendant may be sentenced to an additional or increased term of probation as the result of a probation violation. Nevertheless, the State argues that we must conclude that, under *White*, a defendant who violates his probation may legally be given any sentence within the statutory limits for the underlying offense, including not only a term of incarceration, but also an additional term of probation.

The defendant concedes that if the rule in *White* were the only rule applicable to this case, then the State would prevail. However, he argues that *White* must be interpreted and applied in light of *Ingerson*.

In *Ingerson*, 130 N.H. at 113, the defendant had entered a plea of no contest to two misdemeanor charges. The trial court sentenced her to sixty days incarceration on the first charge, suspended indefinitely on condition of good behavior, and continued the second charge for sentencing indefinitely. *Id.* Two years and nine months later, the defendant was indicted for welfare fraud. *Id.* The trial court found that she had violated the condition of good behavior, and called forward the conviction and sentence on the two misdemeanors. *Id.* at 113-14. We held that the trial court erred in calling forward those sentences because the defendant was entitled, at the time of sentencing on the misdemeanors, to be informed about the time period during which the trial court may exercise its authority to call forward either her conviction or her sentence. *Id.* at 116-17; *see also Stapleford v. Perrin*, 122 N.H. 1083, 1087 (1982) (requiring that

a defendant know "in plain and certain terms" the extent to which the court retains discretion to impose punishment at a later date). We noted that "[a] sentence that can be called forward *indefinitely*, depending on what the trial court considers to be a reasonable period, does not provide the defendant or society with a sentence in 'plain and certain terms.'" *Id.* at 116 (emphasis added).

However, in this case, the defendant's original sentence has not been deferred indefinitely, nor has he been placed on probation indefinitely. Thus, *Ingerson* is distinguishable on its facts.

█ The defendant contends that his sentence was definite at the time of sentencing and his probation was clearly set to terminate after four years. As such, he argues that under *Ingerson* and *White*, we must conclude that a subsequent increase in his probation effectuated an illegal increase in the call forward period for the underlying sentence of imprisonment, which may be imposed for any violation of the terms of his probation. However, the State argues that under *White* and pursuant to the language of the original sentencing order, the defendant knew or should have known at the time of sentencing that he could face probation for up to five years, and thus, under *Ingerson*, his call forward period was not indefinite, but was set at a maximum of five years. We have never addressed this issue. "Generally, when the law is not clear at the time of trial, and remains unsettled at the time of appeal, a decision by the trial court cannot be plain error." *State v. Emery*, 152 N.H. 783, 787 (2005). Thus, we cannot say that the trial court's failure to apply *Ingerson* and *White* in the manner advocated by the defendant was plain error. *Cf. id.*

## II. Defendant's Right to Counsel

The defendant argues that Ford's questioning of him on December 7, 2004, regarding his drug use violated his right to counsel under the Sixth Amendment to the Federal Constitution and Part I, Article 15 of the State Constitution, and, as a result, evidence of his admission on that day should have been excluded at his probation revocation hearing. "When reviewing a trial court's ruling on a motion to suppress, we accept the trial court's factual findings unless they lack support in the record or are clearly erroneous. Our review of the trial court's legal conclusions, however, is *de novo.*" *State v. Plch*, 149 N.H. 608, 613 (2003) (quotation omitted).

We have recognized that a defendant has a due process right under the State Constitution to be represented by counsel when commitment may be the sanction for a probation violation. *Stapleford*, 122 N.H. at 1088; *see also State v. LeCouffe*, 152 N.H. 148, 152 (2005) (adopting the *Stapleford* due process protections under the State Constitution). We have not,

however, defined the scope of this right to counsel in probation revocation proceedings.

The State argues that "a defendant's right to counsel at informal probation revocation proceedings is significantly less expansive than the offense-specific constitutional right to counsel enjoyed by defendants facing criminal charges." Citing *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972), the State contends that "[a] probationer who has already been afforded the full panoply of constitutional rights at his trial is not entitled to the full scope of those rights at his subsequent probation revocation proceeding." However, the State has not suggested how or to what extent we should limit the scope of the constitutional right to counsel at such proceedings. We thus leave for another day determination of the scope of the State constitutional right to counsel at probation revocation proceedings.

The State contends that we need not determine the scope of the right to counsel in probation revocation proceedings in order to render a decision in this case. The State argues that even if the State constitutional right to counsel at probation revocation proceedings is as expansive as the federal constitutional right to counsel at criminal trials under the Sixth Amendment, as the defendant suggests it should be, the defendant's December 7, 2004 admission was not obtained in violation of Sixth Amendment right to counsel principles. Given the State's position, we assume, for purposes of this case only, that the right to counsel at probation revocation proceedings is coextensive with the right to counsel at criminal trials under the Sixth Amendment. *Cf. State v. Cote*, 143 N.H. 368, 379 (1999).

We now turn to the question of whether the defendant's December 7 admission was obtained in violation of his right to counsel. The defendant contends that his right to counsel attached upon the filing of the first Violation of Probation, on September 20, 2004, at which time he requested and received appointed counsel to assist him. This contention is consistent with the principle that the Sixth Amendment right to counsel attaches "at or after the time that adversary judicial proceedings have been initiated against a defendant." *State v. Chaisson*, 123 N.H. 17, 28 (1983). Thus, "[a]ny government interrogation of [the defendant] after [the filing of the first violation of probation], in the absence of counsel, would ... be improper unless [he] had waived his right to counsel." *State v. Scarborough*, 124 N.H. 363, 368-69 (1983).

However, the defendant concedes that "the fact that a defendant has counsel on one matter does not necessarily preclude his interrogation on all other matters." The United States Supreme Court has made clear that "the Sixth Amendment right [to counsel] is 'offense specific.'" *Texas v.*

*Cobb*, 532 U.S. 162, 164 (2001). "[A] defendant's statements regarding offenses for which he [has] not been charged [are] admissible notwithstanding the attachment of his Sixth Amendment right to counsel on other charged offenses." *Id.* at 168. Nevertheless, when the Sixth Amendment right to counsel attaches, it encompasses offenses that, even if not formally charged, would be considered the "same offense" in the double jeopardy context. *United States v. Coker*, 433 F.3d 39, 44 (1st Cir. 2005); *see also Cobb*, 532 U.S. at 172-73. Thus, the relevant inquiry in this case is whether, on December 7, 2004, Ford interrogated the defendant regarding the "same offense" to which his Sixth Amendment right to counsel had already attached.

The defendant argues that his right to counsel was violated because the Rule 10 violation alleged in the Supplemental Violation of Probation was "intertwined" with the Rule 10 violations alleged in the first Violation of Probation, in that both allegations concerned a violation of the same rule for using the same types of drugs. The State urges us to reject the defendant's argument as "a vague and unworkable definition of the point at which the right to counsel attached for the uncharged violation." The State notes that the Rule 10 violation alleged in the Supplemental Violation of Probation, dealing only with the defendant's drug use on or around December 1, 2004, was wholly separate from the violations alleged in the first Violation of Probation, dealing with the defendant's drug use prior to, and on, September 8, 2004.

In *Cobb*, 532 U.S. at 168, the United States Supreme Court declined to adopt a "factually related crimes" exception to the offense-specific Sixth Amendment right to counsel. The Court reasoned that, even where violations of two distinct statutory provisions arise out of the same act or transaction, the two violations may or may not be the "same offense" for double jeopardy purposes, and thus may or may not be the "same offense" for right to counsel purposes. *Id.* at 172-73. To determine whether two violations are the "same offense," the Court adopted the double jeopardy test announced in *Blockburger v. United States*, 284 U.S. 299, 304 (1932), that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Cobb*, 532 U.S. at 173 (quotation omitted).

▪ In this case, the first Violation of Probation alleged drug use or an admission of drug use by the defendant on six specific dates: June 11, 2003, October 14, 2003, May 18, 2004, July 13, 2004, August 24, 2004, and September 8, 2004. The Supplemental Violation of Probation also alleged

an admission of drug use by the defendant on a specific date: December 1, 2004. Although the alleged drug use violated the same rule of probation on each occasion, the violations were separate and distinct and occurred on different dates. For double jeopardy purposes, the two violations cannot be the "same offense," as they do not even meet the threshold requirement of the *Blockburger* test that the violations arise out of the "same act or transaction." *See Cobb*, 532 U.S. at 173; *Blockburger*, 284 U.S. at 304. Thus, because the two violations are not the "same offense" for double jeopardy purposes, they are not the "same offense" for right to counsel purposes. *Cf. Cobb*, 532 U.S. at 172-73; *Coker*, 433 F.3d at 44. Therefore, even if Ford's questioning of the defendant constituted interrogation, it was interrogation regarding an uncharged offense to which the right to counsel had not yet attached.

We hold that, in this case, the defendant's right to counsel was not violated, and his statements to Ford on December 7, 2004, were admissible at his probation revocation proceeding. Having addressed the defendant's claim under the State Constitution, we must now address his claim under the Federal Constitution. *State v. Ball*, 124 N.H. 226, 231, 233 (1983). However, the Federal Constitution offers the defendant no greater protection than does the State Constitution under these circumstances. *Stapleford*, 122 N.H. at 1088; *Gagnon v. Scarpelli*, 411 U.S. 778, 790 (1973). Accordingly, we reach the same result under the Federal Constitution as we do under the State Constitution.

For all of the reasons stated above, we vacate the defendant's sentence only to the extent that his term of probation exceeds five years, and remand this case to the trial court for further orders consistent with this opinion.

> *Affirmed in part; vacated in part; remanded for resentencing.*

DALIANIS, J., concurred; BROCK, C.J., retired, specially assigned under RSA 490:3, concurred.