Hillsborough-northern judicial district
No. 2010-526

## THE STATE OF NEW HAMPSHIRE

### v.

## ROSCOE WHITE

Argued: November 16, 2011
Opinion Issued: March 9, 2012

*Michael A. Delaney*, attorney general (*Thomas E. Bocian*, assistant attorney general, on the brief and orally), for the State.

*Stephanie Hausman*, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

HICKS, J. The defendant, Roscoe White, appeals his convictions, by a jury, of one count of first-degree murder, *see* RSA 630:1-a (2007), and one count of attempted first-degree assault, *see* RSA 631:1 (2007); RSA 629:1 (2007). On appeal, he argues that the Trial Court (*Tucker*, J.) erred in denying his motion to suppress inculpatory statements he made to an informant. We affirm.

On January 2, 2007, Aaron Kar was shot to death while standing with friends outside an apartment building in Manchester. The Manchester police suspected that the defendant was involved and questioned him about the incident on several occasions shortly after the shooting. During the following year, the police continued to investigate the crime.

Between October 1 and November 8, 2007, an undercover officer with the New Hampshire Drug Task Force purchased crack cocaine from the defendant six times as part of an ongoing investigation into the defendant's drug trafficking. However, the defendant was not arrested or charged with these crimes at this time.

Subsequently, on November 24, a sergeant with the Manchester Police Department received information from the informant, an inmate at the Hillsborough County House of Corrections, that he knew something about the January 2 shooting. Over the next few weeks, members of the Manchester Police Department met with the informant to discuss what he knew. The informant offered, in exchange for leniency on his pending charges, to provide the police with information about who shot Kar and the person who provided the murder weapon. The informant then provided the police with specific details about the shooting, including that he knew the defendant and that the defendant had claimed to be the person who shot Kar.

On February 4, 2008, the informant met with police and prosecutors to discuss recording a conversation between himself and the defendant. The police planned for this conversation to occur at the Hillsborough County House of Corrections after the defendant's arrest on drug charges. During this meeting, the police suggested ways in which the informant could get the defendant to talk about the murder. They also specifically told the informant not to talk to the defendant about the drug charges for which he was to be arrested.

On February 7, 2008, the defendant was arrested for the sale of controlled drugs and detained at the Hillsborough County House of Corrections. He was arraigned the next day and counsel was appointed for him on February 9.

On February 11, an assistant attorney general authorized a one-party intercept to make an audio recording of a conversation between the informant and the defendant that day. *See* RSA 570-A:2, II(d) (2001). While the authorization stated that there was "reasonable suspicion that evidence of the crime of drug sales and/or homicide w[ould] be derived from this interception," the assistant attorney general later testified that the language referring to the crime of drug sales was "a typo" and the authorization "was intended to only be issued for the homicide." She further stated that she "was very clear" that during the conversation the informant was "not to go near the drug sales for which the [d]efendant was . . . incarcerated."

After obtaining the authorization, the police arranged to have the informant and the defendant placed in the same cell. They met with the informant once more and reiterated the instruction that he not discuss the defendant's drug charges. Upon being placed in the cell together, the defendant and the informant began conversing. Notwithstanding the explicit instructions to the contrary, the informant began discussing the defendant's drug charges and intermittently discussed them throughout the conversation. As the conversation continued, the defendant made statements implicating himself in Kar's murder, including admitting that he was the shooter. On February 13, the Manchester Police Department obtained an arrest warrant for the defendant for the charge of first-degree murder; he was indicted on the murder and attempted first-degree assault charges on May 16, 2008.

Prior to trial, the defendant moved to suppress the recorded statements, arguing that any statements he made in response to the informant's questions about the drug charges were elicited in violation of his right to counsel on those charges. He contended that any statements made after this violation, including statements about the shooting, were the fruit of that violation and, therefore, must be suppressed as the "fruit of the

poisonous tree." He further argued that "[t]he [S]tate's conduct in this case was fundamentally unfair and thus a violation of due process." (Bolding omitted.)

The State conceded that the defendant's right to counsel had attached with respect to the drug charges and, thus, any discussion between the informant and the defendant relating to the drug charges would be inadmissible at a trial on those charges. The State later represented that it would not introduce any portions of the conversation related to the drug charges at trial on the charges related to the shooting. The State maintained, however, that because the defendant's right to counsel had not yet attached on the charges related to the shooting, there had been no violation of his right to counsel on those charges and the statements related to the shooting were admissible. The State also argued that its actions did not constitute a due process violation.

Following a hearing, the trial court denied the defendant's motion. The court found that the defendant's right to counsel had attached on the drug charges and, "[a]s a result, [the informant's] inquiries constituted impermissible interrogation with respect to that case." Nevertheless, the court found that when the defendant spoke with the informant, he was not charged with any crime related to the shooting and, "since the right to counsel is 'offense specific,' the right to counsel had not attached in connection with the murder charges." (Citation omitted.) The court further found that the defendant's statements to the informant were not involuntary and that "the investigative tactic used in this case did not violate the defendant's state or federal rights to due process."

"When reviewing a trial court's ruling on a motion to suppress, we accept the trial court's factual findings unless they lack support in the record or are clearly erroneous. Our review of the trial court's legal conclusions, however, is *de novo.*" *State v. Matey*, 153 N.H. 263, 268 (2006) (quotation omitted).

The defendant argues on appeal that the trial court erred in denying his motion to suppress. He asserts that the informant's questions about his pending drug charges violated his right to counsel under the Sixth Amendment to the United States Constitution and Part I, Article 15 of the New Hampshire Constitution, and that his statements about the shooting should have been excluded as "fruit of the poisonous tree." He further argues that "[a]llowing the State to intentionally violate the constitutional rights of an accused in order to elicit incriminating statements is fundamentally unfair and violates due process." We first address the defendant's claims under the State Constitution, *State v. Ball*, 124 N.H. 226, 231 (1983), and cite federal opinions for guidance only. *Id.* at 231-33.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI; *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991). The State counterpart of the Sixth Amendment right to counsel provides:

> Every person held to answer in any crime or offense punishable by deprivation of liberty shall have the right to counsel at the expense of the state if need is shown; this right he is at liberty to waive, but only after the matter has been thoroughly explained by the court.

N.H. CONST. pt. I, art 15.

■ A criminal defendant's right to counsel under both the State and Federal Constitutions attaches when adversary proceedings have commenced through a formal charge, preliminary hearing, indictment, information, or arraignment. *State v. Jeleniewski*, 147 N.H. 462, 467-68 (2002); *Brewer v. Williams*, 430 U.S. 387, 398 (1977). This right is designed to give a defendant the benefit of legal advice when making important decisions regarding his case. *Jeleniewski*, 147 N.H. at 468; *United States v. Gouveia*, 467 U.S. 180, 188-89 (1984) (recognizing "that the core purpose of the counsel guarantee is to assure aid at trial, when the accused is confronted with both the intricacies of the law and the advocacy of the public prosecutor" (quotations and brackets omitted)).

■ Once the right has attached, the assistance of counsel is provided at critical stages of criminal proceedings in order to preserve a defendant's right to a fair trial, *Jeleniewski*, 147 N.H. at 468; *Maine v. Moulton*, 474 U.S. 159, 170 (1985), and absent a waiver of this right by a defendant, any knowing government interrogation of a defendant after attachment, without the presence of counsel, is improper, *see State v. Bruneau*, 131 N.H. 104, 108 (1988); *Moulton*, 474 U.S. at 176. This rule applies equally to direct and "indirect and surreptitious interrogations as well as those conducted in the jailhouse" through the use of informants. *United States v. Henry*, 447 U.S. 264, 273 (1980) (quotation omitted); *see Bruneau*, 131 N.H. at 108. Thus, "[b]y intentionally creating a situation likely to induce [a defendant] to make incriminating statements without the assistance of counsel, the Government violate[s]" a defendant's right to counsel. *Henry*, 447 U.S. at 274. This is so "even where the government expressly instructs its informant not to initiate any conversations with the accused and not to question him regarding the pending charges." *United States v. Terzado-Madruga*, 897 F.2d 1099, 1109 (11th Cir. 1990).

██ The Supreme Court has made clear, however, that "the Sixth Amendment right [to counsel] is 'offense specific.'" *Matey*, 153 N.H. at 269 (quoting *Texas v. Cobb*, 532 U.S. 162, 164 (2001)); *McNeil*, 501 U.S. at 175. While we have implicitly held that the right to counsel under Part I, Article 15 is also "offense specific," *see Matey*, 153 N.H. at 269-71, we now explicitly adopt, under our constitution, the "offense specific" nature of the right to counsel. This means that the right to counsel attaches only to offenses for which prosecution has commenced and "cannot be invoked once for all future prosecutions." *McNeil*, 501 U.S. at 175. Thus, a "defendant's statements regarding offenses for which he [has] not been charged [are] admissible notwithstanding the attachment of his Sixth Amendment right to counsel on other charged offenses." *Matey*, 153 N.H. at 270 (quotation omitted).

Nevertheless, there may be times when interrogation on uncharged offenses "might encroach on the defendant's rights concerning the pending charges." *Thompson v. State*, 93 S.W.3d 16, 24 (Tex. Crim. App. 2001). This issue was recognized by the Supreme Court in *Moulton*. There, the Court "considered the constitutional implications of a surreptitious investigation that yielded evidence pertaining to two crimes. For one, the defendant had been indicted; for the other, he had not." *Moran v. Burbine*, 475 U.S. 412, 431 (1986) (discussing *Moulton*). The Court held that the defendant's right to counsel was violated by the admission of incriminating statements he made to his codefendant, who was acting as a government informant, concerning the crime for which he had been indicted, even though the police had recorded the meeting with the informant to gain information on a separate uncharged crime. *Moulton*, 474 U.S. at 176-80.

 In so doing, the Court stated:

> The police have an interest in the thorough investigation of crimes for which formal charges have already been filed. They also have an interest in investigating new or additional crimes. Investigations of either type of crime may require surveillance of individuals already under indictment. Moreover, law enforcement officials investigating an individual suspected of committing one crime and formally charged with having committed another crime obviously seek to discover evidence useful at a trial of either crime. In seeking evidence pertaining to pending charges, however, the Government's investigative powers are limited by the Sixth Amendment rights of the accused. To allow the admission of evidence obtained from the accused in violation of his Sixth Amendment rights whenever the police assert an alternative, legitimate reason for their surveillance invites abuse by law

enforcement personnel in the form of fabricated investigations and risks the evisceration of the Sixth Amendment right recognized in [*Massiah v. United States*, 377 U.S. 201 (1964)]. On the other hand, to exclude evidence pertaining to charges as to which the Sixth Amendment right to counsel had not attached at the time the evidence was obtained, simply because other charges were pending at that time, would unnecessarily frustrate the public's interest in the investigation of criminal activities. Consequently, incriminating statements pertaining to pending charges are inadmissible at the trial of those charges, notwithstanding the fact that the police were also investigating other crimes, if, in obtaining this evidence, the State violated the Sixth Amendment by knowingly circumventing the accused's right to the assistance of counsel.

*Moulton*, 474 U.S. at 179-80. The court noted in a footnote that "[i]ncriminating statements pertaining to other crimes, as to which the Sixth Amendment right has not yet attached, are, of course, admissible at a trial of those offenses." *Id.* at 180 n.16. The Court reaffirmed this reasoning in *Moran* when it explained that *Moulton* "made clear . . . that the evidence concerning the crime for which the defendant had not been indicted — evidence obtained in precisely the same manner from the identical suspect — would be admissible at a trial limited to those charges." *Moran*, 475 U.S. at 431; *see McNeil*, 501 U.S. at 176.

' ■ There is no dispute that the defendant's right to counsel had attached with respect to the drug charges and that this right was violated by the informant's questioning of the defendant about those charges. Indeed, the State concedes that "during any proceedings on the drug charges, the evidence that the informant elicited could not be used." However, because judicial proceedings had not yet commenced against the defendant with respect to the shooting, his right to counsel had not attached as to those charges. Accordingly, the informant's questioning of the defendant regarding the shooting did not violate his right to counsel and his statements as to the shooting were admissible at the trial on those charges. *See McNeil*, 501 U.S. at 176; *State v. Kilgus*, 128 N.H. 577, 593-94 (1986) (finding no violation of the defendant's Sixth Amendment right to counsel when informant elicited statements from the defendant about uncharged attempted murder even though defendant was already charged with witness tampering).

Nonetheless, the defendant maintains that "[t]he statements about the shooting followed [the informant's] numerous references to the drug charges" and, as a result, "only occur[red] though [the] violation of [the

defendant's] right to counsel" on those charges. Thus, he urges us to apply the "fruit of the poisonous tree" doctrine and hold that his statements concerning the shooting should have been suppressed. In making this argument, he relies upon a number of cases. *See, e.g., Missouri v. Seibert,* 542 U.S. 600 (2004); *Fellers v. United States,* 540 U.S. 519 (2004); *Nix v. Williams,* 467 U.S. 431 (1984); *Henry,* 447 U.S. 264; *Gilbert v. California,* 388 U.S. 263 (1967); *Hoffa v. United States,* 385 U.S. 293 (1966); *Wong Sun v. United States,* 371 U.S. 471 (1963); *State v. Panarello,* 157 N.H. 204 (2008); *State v. Roache,* 148 N.H. 45 (2002); *State v. Gravel,* 135 N.H. 172 (1991); *State v. Baillargeon,* 124 N.H. 355 (1983). None of these cases, however, stands for the proposition that statements regarding uncharged offenses, elicited at the same time as statements regarding charged offenses for which there was a violation of a defendant's right to counsel, constitute a "fruit" of that violation. And we decline to adopt such a rule.

■ This decision is consistent with "the general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." *United States v. Morrison,* 449 U.S. 361, 364 (1981). The Supreme Court's approach in addressing violations of the Sixth Amendment has "been to identify and then neutralize the taint by tailoring relief appropriate in the circumstances to assure the defendant the effective assistance of counsel and a fair trial." *Id.* at 365. Accordingly, the Court has looked to whether "the constitutional infringement identified has had or threatens some adverse effect upon the effectiveness of counsel's representation or has produced some other prejudice to the defense." *Id.* "Absent such impact on the criminal proceeding, however, there is no basis for imposing a remedy in that proceeding, which can go forward with full recognition of the defendant's right to counsel and to a fair trial." *Id.*

The defendant's right to counsel in this case was violated on the drug charges. The appropriate remedy for this constitutional violation was to exclude evidence obtained from this violation from trial on those charges. However, there was no violation with respect to the shooting charges. Accordingly, "[t]here is no effect of a constitutional dimension which needs to be purged to make certain that [the defendant] has been effectively represented and not unfairly convicted." *Id.* at 366.

Citing *Gilbert,* the defendant argues that "[t]he offense-specific rule does not affect application of the exclusionary rule: statements taken in violation of the right to counsel are not admissible in any case." The simple answer to this argument is that, as discussed above, there was no right-to-counsel violation with respect to the statements concerning the shooting.

■ The defendant argues that we should find the State Constitution more protective than the Federal Constitution under these circumstances. He maintains that the above-quoted provision of Part I, Article 15 is "more broadly-worded than the federal constitution" and that we have "taken a more protective view of the right to counsel under the state constitution" with respect to custodial interrogations and the right against self-incrimination. He further contends that we have implemented the "fruit of the poisonous tree" doctrine "in a more protective manner than the Supreme Court." We do not disagree. However, we have never construed the state constitutional right to counsel as arising earlier than the Sixth Amendment right to counsel; nor have we found that the use of an informant, in and of itself, violates our constitution. We decline to do either in this case.

■ Finally, the defendant argues that "[s]anctioning the State's actions here would permit a knowing violation of the law for the purpose of eliciting incriminating statements from a suspect," and that "[s]uch a holding would not comport with due process." The New Hampshire Constitution guarantees every citizen due process of the law. *State v. Damiano*, 124 N.H. 742, 746 (1984); N.H. CONST. pt. I, art. 15. The standard for determining whether a law or procedure violates due process is whether it is fundamentally fair. *State v. Barnett*, 147 N.H. 334, 336 (2001). Fundamental fairness requires that the government conduct conform to the community's sense of justice, decency and fair play. *State v. Mwangi*, 161 N.H. 699, 703 (2011).

■ The defendant contends that, under the decision in this case, "the State . . . has every incentive to intentionally violate a suspect's right to counsel on one charge in order to elicit inculpatory statements about an uncharged crime" and "may decide that foregoing use of a defendant's statements in violation of the right to counsel is a small price to pay in order to purchase the defendant's trust in an informant on a different charge." Undoubtedly, the informant's conduct in this case violated the defendant's right to counsel with respect to the drug charges. We do not find, however, that these facts demonstrate "the kind of misbehavior that so shocks the sensibilities of civilized society" as to constitute a due process violation. *Moran*, 475 U.S. at 433-34.

■ Moreover, the State's use of an informant does not constitute a *per se* constitutional violation. *See Hoffa*, 385 U.S. at 311 ("the use of secret informers is not *per se* unconstitutional"); *State v. Lewis*, 129 N.H. 787, 798 (1987) (same). As we have previously stated, "fundamental unfairness does not occur for purposes of the due process clause simply because a defendant places himself at a disadvantage under circumstances in which there are no substantive constitutional violations." *Lewis*, 129 N.H. at 798.

.

As the Federal Constitution offers the defendant no greater protection than does our State Constitution under these circumstances, *see Matey*, 153 N.H. at 271; *Barnett*, 147 N.H. at 336; *McNeil*, 501 U.S. at 175; *Moran*, 475 U.S. at 432-34, we reach the same result under the Federal Constitution as we do under the State Constitution.

*Affirmed.*

DALIANIS, C.J., and CONBOY and LYNN, JJ., concurred.