**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**


**In Case No. 2021-0161, <u>State of New Hampshire v. Jesse Warren</u>, the court on September 29, 2022, issued the following order:**


Having considered the briefs, the record submitted on appeal, and the oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case.  The defendant, Jesse Warren, appeals his conviction for driving with a suspended license, subsequent offense.  <u>See</u> RSA 263:64, I, VI (2014).  He argues that the Trial Court (<u>Stephen</u>, J.) erred when, despite his lack of counsel at the time, it reinstated the complaint for that charge, which had been placed on file without a finding.  He also asserts that the court erred when it reinstated the complaint as a consequence of his failure to pay a fine without first making a finding as to his "ability to pay."  Because we agree with the defendant that he had a right to counsel at the time the complaint was reinstated, we vacate and remand.

In 2017, the State charged the defendant by complaint with two crimes arising out of the same incident: one count of driving with a suspended license, subsequent offense, <u>see</u> <u>id</u>., and one count of disorderly conduct, <u>see</u> RSA 644:2 (2016).  The State filed a notice of intent to seek Class A misdemeanor penalties on the operating after suspension (OAS) charge.

The defendant retained counsel and negotiated a plea agreement in March 2018.  He pleaded guilty on the disorderly conduct charge and the court sentenced him to 90 days in the house of corrections, with 15 days to serve and 75 days deferred, and imposed a fine and assessed a penalty totaling $1860, with $620 to pay and $1240 suspended.  In exchange, the court placed the OAS charge on file without a finding for a period of two years conditioned upon the defendant's good behavior and compliance with the terms of the disorderly conduct sentence.  <u>See</u> RSA 262:42 (2014) (authorizing placement of complaint on file).  This disposition of the OAS charge prevented the defendant from being at risk of becoming certified as a habitual offender.  <u>See</u> RSA 259:39 (2014); RSA 262:19 (2014).  That same day, the defendant entered into a payment plan with the court in which he agreed to pay the $620 fine plus an additional $25 fee within one month.

Because the defendant failed to timely pay the fine and fee, the court added a $50 fine, bringing the total amount owed to $695.  In July 2018, based on the defendant's continued failure to pay, the State filed a motion to reinstate

the OAS complaint that had been placed on file without a finding and to impose the balance of the disorderly conduct sentence. On August 30, the defendant paid the outstanding fine balance of $695 and the court scheduled a hearing on the State's motion for October.

The defendant's counsel subsequently withdrew, and the defendant represented himself at the October 2018 motion hearing. At the hearing, the State acknowledged that resolution of the motion to impose the deferred disorderly conduct sentence should be postponed so that the defendant could acquire, or be appointed, counsel. However, notwithstanding the defendant's lack of counsel, the State requested that the court reinstate the OAS complaint effective immediately because, by not timely paying the fine, the defendant had failed to comply with the terms of the disorderly conduct sentence. After hearing from both parties, the court granted the motion to reinstate the complaint. Later that day, the defendant completed a financial affidavit and the court appointed the Public Defender to represent him.

Appointed counsel thereafter filed an objection to the motion to impose the deferred disorderly conduct sentence and a motion to reconsider the court's reinstatement of the OAS complaint. Before the start of trial on the OAS charge, the court heard oral argument on the motion to reconsider reinstatement of that charge and denied the motion. The court found the defendant guilty of OAS. It sentenced him to 180 days in the house of corrections, with 20 days to serve and 160 days suspended, and imposed a fine of $1800, with $450 to pay and $1350 suspended. Immediately after trial of the OAS charge, the court heard argument on the motion to impose the deferred disorderly conduct sentence. The court did not impose any of the deferred jail time and again suspended the remaining fine on the disorderly conduct charge.

The defendant appealed his conviction to superior court for a de novo jury trial. See RSA 599:1 (Supp. 2021) (authorizing appeal from Class A misdemeanor conviction to the superior court for de novo jury trial). However, he then waived his right to a jury trial and, based on the State's offers of proof, the superior court found him guilty and sentenced him. The defendant appealed that decision to this court. See State v. Warren, No. 2019-0701 (N.H. Jan. 29, 2021) (non-precedential order). On appeal, the parties agreed that the superior court had erred when, upon the defendant's waiver of his jury trial right, the court did not immediately remand the case to the circuit court. See id. at 1. Accordingly, we vacated the superior court's rulings and instructed it to remand the case to the circuit court for imposition of the sentence. See id.; RSA 599:1. Upon remand, the circuit court imposed its original sentence on the OAS conviction, but stayed imposition of that sentence pending appeal. This appeal followed.

As a threshold matter, the State argues that, because the defendant did not raise his present arguments in his first appeal to this court, he waived them, and we should dismiss this appeal on that basis. The waiver doctrine "serves judicial economy by forcing parties to raise issues whose resolution might spare the court and parties later rounds of remands and appeals." State v. Robinson, 170 N.H. 52, 61 (2017) (quotation omitted). In applying the concept of waiver in the context of a subsequent appeal, we have adopted the First Circuit Court of Appeals' approach: "whether 'there is a waiver depends not on counting the number of missed opportunities to raise an issue, but on whether the party had sufficient incentive to raise the issue in the prior proceedings.'" Id. (quoting United States v. Ticchiarelli, 171 F.3d 24, 32-33 (1st Cir. 1999); ellipses omitted). "This approach requires a fact-intensive, case-by-case analysis." Ticchiarelli, 171 F.3d at 33. Here, the parties dispute whether the defendant had sufficient incentive in his first appeal to raise the arguments he now advances regarding errors in the circuit court proceeding. We agree with the defendant that, given the unique procedural history of this case, the waiver doctrine does not preclude his present appeal.

The defendant's appeal, under RSA 599:1, of his OAS conviction in circuit court to the superior court had the effect of "vacat[ing] [that] judgment and transfer[ing] the whole proceeding to the Superior Court, there to be tried de novo on the original complaint." State v. Cook, 96 N.H. 212, 214 (1950). In short, once the defendant appealed to the superior court, "[t]he parties [stood] as though there had been no trial." Id. Following his conviction in the superior court, the defendant filed his first appeal to this court. See Warren, No. 2019-0701 (N.H. Jan. 29, 2021) (non-precedential order). At that time, he had no incentive to challenge deficiencies in the circuit court proceeding because, as a matter of law, the judgment of the circuit court had been vacated in its entirety and supplanted by the superior court proceeding and judgment. Instead, the defendant focused his first appeal on the only judgment against him — the superior court's ruling.

The State argues that the defendant should be precluded from pursuing this appeal because the facts giving rise to his present claims were fully developed at the time of the prior appeal and appellate counsel in the first appeal was, or should have been, aware of them. We are not convinced. Although both of the State's factual assertions are correct, they do not vitiate the legal principle that, at the time of the defendant's first appeal, the circuit court's judgment had been nullified. Under these circumstances, we conclude that the defendant did not have sufficient incentive during his first appeal to raise the arguments he now advances as to the circuit court's errors. See Robinson, 170 N.H. at 61. Accordingly, he has not waived these arguments.

We now turn to the merits of the defendant's appeal. On several statutory and constitutional grounds, he asserts that the court erred when it reinstated the OAS complaint at a time when he was not represented by

3

counsel.  We first address the defendant's statutory arguments.  See State v. Locke, 166 N.H. 344, 346 (2014) (noting our "policy of deciding cases on constitutional grounds only when necessary").  The defendant asserts that he had a right to counsel at the October 2018 hearing under RSA 604-A:2, I (Supp. 2021), RSA 604-A:2-f, I (Supp. 2021), and RSA 604-A:3 (2001).  The State counters that we should not address these arguments because the defendant failed to adequately preserve them by raising them in the trial court.  We agree with the State that the defendant did not raise these statutory grounds for his right to counsel claim in the trial court, including in his motion to reconsider, and therefore, these arguments are not adequately preserved for our review.  See Blagbrough Family Realty Trust v. A & T Forest Prods., 155 N.H. 29, 35 (2007).

Because the defendant has not preserved his statutory arguments, we confine our review to plain error.  See Sup. Ct. R. 16-A; State v. Ruiz, 170 N.H. 553, 566 (2018).  The plain error rule allows us to consider errors that were not raised in the trial court.  Ruiz, 170 N.H. at 566.  "To reverse a trial court decision under the plain error rule: (1) there must be an error; (2) the error must be plain; (3) the error must affect substantial rights; and (4) the error must seriously affect the fairness, integrity or public reputation of judicial proceedings."  Id. (quotation omitted).

Here, even if we assume that the trial court erred, we conclude that the second criterion — that the error be plain — is not met for each of the defendant's statutory claims.  "For the purposes of the plain error rule, an error is plain if it was or should have been obvious in the sense that the governing law was clearly settled to the contrary."  Id. (quotation omitted).  For each of the defendant's statutory arguments discussed below, the governing law is not clearly settled.

Because the defendant raises similar arguments based on RSA 604-A:2 and RSA 604-A:3, we address them together.  RSA 604-A:2, I, requires trial courts to advise defendants charged with felonies and class A misdemeanors of their right to counsel and sets forth a process by which an indigent defendant may obtain appointed counsel.  See RSA 604-A:2, I.  RSA 604-A:3 provides that "[a] defendant for whom counsel is appointed shall be represented by counsel from his initial appearance before the court at every stage of the proceedings until the entry of final judgment."  Although both statutes touch upon the right to counsel, we have never interpreted either statute as providing a statutory right to counsel independent of the constitutional right to counsel.  Accordingly, we see no plain error.

Next, RSA 604-A:2-f, I, provides for appointment of counsel at final hearings regarding the "nonpayment of an assessment or nonperformance of community service."  The State relies on State v. Brawley, 171 N.H. 333 (2018) to argue that this statute is inapplicable here because "assessment" refers only

4

to a defendant's obligation under RSA 604-A:9 (Supp. 2021) to repay the state for legal services rendered — "not to a fine levied as part of a defendant's sentence." The defendant asserts to the contrary that Brawley does not preclude the application of RSA 604-A:2-f to this scenario. Because we have not yet had occasion to address the applicability of RSA 604-A:2-f to this type of fine, and given the parties' divergent and plausible interpretations of the statute and applicable case law, we cannot say that any error that the trial court might have committed by not invoking this statute sua sponte would have been plain error. See State v. Pennock, 168 N.H. 294, 312 (2015).

Given that the defendant cannot prevail on any of his statutory arguments, we now consider his constitutional claims. We first address the defendant's argument that he had the right to counsel under Part I, Article 15 of the New Hampshire Constitution and the Sixth and Fourteenth Amendments to the United States Constitution. We address the defendant's claim under the State Constitution and rely upon federal law only to aid our analysis. See State v. Ball, 124 N.H. 226, 231-32 (1983). Because this issue poses a question of constitutional law, we review it de novo. State v. Hall, 154 N.H. 180, 182 (2006).

The State Constitution provides that: "Every person held to answer in any crime or offense punishable by deprivation of liberty shall have the right to counsel at the expense of the state if need is shown . . . ." N.H. CONST. pt. I, art. 15. "This right is designed to give a defendant the benefit of legal advice when making important decisions regarding his [or her] case." State v. White, 163 N.H. 303, 308 (2012). The right attaches when adversary proceedings have commenced through a formal charge, preliminary hearing, indictment, information, or arraignment. Id. Once the right has attached, the defendant is entitled to assistance of counsel "at critical stages of criminal proceedings in order to preserve [the] defendant's right to a fair trial." Id.

The parties do not dispute that the right to counsel on the OAS charge, for which the State sought Class A misdemeanor penalties, attached when the OAS complaint was originally filed. See State v. Jeleniewski, 147 N.H. 462, 468 (2002); see also State v. Weeks, 141 N.H. 248, 250 (1996); RSA 651:2, I (2016). They disagree, however, as to whether the October 2018 hearing on the State's motion to reinstate the OAS complaint was a "critical stage" of the proceedings. The defendant argues that the hearing at issue was a critical stage because the potential consequence of the hearing — reinstatement of the OAS complaint — was adverse to him and to the ultimate resolution of that charge, and because that consequence could have been avoided or mitigated by counsel. The State counters that it was not a critical stage because none of the defendant's substantial rights were implicated. We agree with the defendant that the hearing was a "critical stage" at which he was entitled to counsel.

5

A "critical stage" of the proceedings is one in which "substantial rights of a criminal accused may be affected." Mempa v. Rhay, 389 U.S. 128, 134 (1967); see also Woods v. Donald, 575 U.S. 312, 315 (2015) (per curiam) (characterizing a critical stage as "one that h[olds] significant consequences for the accused" (quotation omitted)). The core of the right to counsel is "the opportunity for a defendant to consult with an attorney and to have him [or her] investigate the case and prepare a defense for trial." Kansas v. Ventris, 556 U.S. 586, 590 (2009) (quotation omitted); see State v. Moussa, 164 N.H. 108, 125 (2012). But the right to the assistance of counsel is not confined to trial. State v. Chase, 109 N.H. 296, 297 (1969). It extends to other "critical stages," including certain arraignments and preliminary hearings, id., and sentencing, Mempa, 389 U.S. at 137; State v. Parker, 155 N.H. 89, 91-92 (2007).

Here, the hearing on the motion to reinstate the complaint was a critical stage of the proceedings because it affected "substantial rights" of the defendant and held "significant consequences" for him: It had the potential to, and did, result in reinstatement of the OAS complaint. The reinstatement of the complaint presented the possibility that the court could impose bail conditions pending trial. See RSA 597:2, I (Supp. 2021); N.H. R. Crim. P. 5(c) (contemplating appointment of counsel for defendants charged with Class A misdemeanors prior to determination of bail). Moreover, reinstatement of the complaint put the defendant in jeopardy of the ultimate result he had attempted to avoid with the negotiated plea — a conviction for OAS, which had the potential to result in up to a year of imprisonment, see RSA 651:2, II(c) (2016), and certification as a habitual offender.

Further, consultation with counsel might have enabled the defendant to meet and counter the State's motion. See United States v. Ash, 413 U.S. 300, 313 (1973) (describing "critical stage" inquiry as an examination of the proceeding at issue "to determine whether the accused required aid in coping with legal problems or assistance in meeting his adversary"). At the hearing, the State's sole basis for bringing forward the OAS complaint was the defendant's failure to timely pay the fine associated with the disorderly conduct conviction. Although the defendant attempted to challenge this basis by arguing that he had paid the fine, albeit late, he also made statements that implied that the reason he did not timely pay the fine was because he had forgotten about it. He made other statements, however, that suggested that he may not have been financially able to pay the fine when it came due. Counsel could have helped the defendant more clearly articulate why he had not timely paid and could have provided context for those reasons by more fully developing the record. Counsel also could have pursued the argument that the defendant was entitled to an "ability to pay" hearing prior to reinstatement of the OAS complaint.

The State argues that Jeleniewski requires a different result. We are unpersuaded. In that case, the dispositive issue was whether the defendant's right to counsel had attached. See Jeleniewski, 147 N.H. at 467-69. We concluded it had not. Id. at 468, 469. Whether the right to counsel has attached is a separate and distinct inquiry from whether a particular proceeding is a "critical stage." See Rothgery v. Gillespie County, 554 U.S. 191, 212 (2008). Attachment occurs "when adversary proceedings have commenced through a formal charge, preliminary hearing, indictment, information, or arraignment." Jeleniewski, 147 N.H. at 467-68. Once the right to counsel has attached, the constitution guarantees the assistance of counsel at "critical stages of criminal proceedings." White, 163 N.H. at 308. In other words, the right to counsel must first attach in order for the "critical stage" inquiry to become relevant. See id. Because we concluded in Jeleniewski that the defendant's right had not attached, we had no need to reach the question of whether the proceeding at issue was a "critical stage." See Jeleniewski, 147 N.H. at 467-69. The opposite is true here. It is undisputed that the defendant's right to counsel had already attached at the time of the hearing on the motion to reinstate the complaint; the only issue in dispute is whether that hearing was a "critical stage." Accordingly, Jeleniewski does not control.

For all these reasons, we conclude that the hearing on the motion to reinstate the complaint was a "critical stage" of the proceedings, and, therefore, the court violated the defendant's state constitutional right to counsel when it reinstated the complaint notwithstanding the defendant's lack of counsel. This conclusion does not end our analysis, however, because the parties disagree about whether this error is reversible. The State argues that the harmless error doctrine applies to this situation and that the court's error was harmless. The defendant counters that the deprivation of the right to counsel constitutes a structural error for which no showing of prejudice is required, but, even if the harmless error doctrine applies, the State has not met its burden of proving harmless error. We assume, without deciding, that a harmless-error-like analysis applies here, and agree with the defendant that the State has not met its burden.

Generally, the harmless error doctrine applies to the erroneous admission or exclusion of evidence at trial and requires the State to prove beyond a reasonable doubt that the error did not affect the verdict. See State v. Papillon, 173 N.H. 13, 28 (2020). Application of this doctrine in the present context requires the State to show that the defendant was not prejudiced by the absence of counsel at the October 2018 hearing. See Moses v. Helgemoe, 116 N.H. 190, 191 (1976); Coleman v. Alabama, 399 U.S. 1, 10-11 (1970) (remanding for determination of harmless error, including whether or not defendants were "prejudiced by the absence of counsel at the preliminary hearing").

7

The State argues that the defendant was not prejudiced by his lack of counsel at the hearing on the motion to reinstate the complaint because he was later appointed counsel who filed a motion to reconsider the court's ruling. It asserts that this gave him an opportunity to raise, with the benefit of counsel, his argument that the complaint should not be reinstated because of his inability to pay, which the court nevertheless rejected on its merits. We are not persuaded that the motion to reconsider cured the prejudice to the defendant.

Although defense counsel was able to raise in the motion to reconsider the argument that the defendant should have been afforded a hearing on whether he willfully failed to comply with his disorderly conduct sentence, the court's resolution of that argument was infected by the defendant's unfavorable statements — made without the benefit of the advice of counsel — during the hearing on the motion to reinstate. In its objection to the motion to reconsider, the State emphasized statements the defendant made at the October 2018 hearing on the motion to reinstate, characterizing his statements as follows: "[H]e lost track of his obligation to pay this fine due to his numerous court matters. . . . [He] either ignored the fine or forgot to pay it." Based on the defendant's statements, which the State described as showing willful nonpayment, it argued that the defendant could not, on a motion to reconsider, argue that he had lacked the ability to pay the fine. The State highlighted the same point during oral argument on the motion to reconsider in January 2019, asserting that the hearing on the motion to reinstate the complaint satisfied the requirement of an ability to pay hearing and that the defendant's statements during that hearing proved that his failure to pay was willful. Specifically, the State argued that "[i]t wasn't an issue about . . . an inability to pay. He ignored it. He disregarded it. He forgot it, for whatever reason. His failure to pay the fine -- the Court made that inquiry -- was willful." On appeal, the State has not met its burden of proving that the trial court did not rely on those statements — which the defendant made at the October 2018 hearing on the motion to reinstate without the benefit of counsel's clarification, explanation of context, or evidentiary support — in ruling on the motion to reconsider.

The State also argues that the defendant was not prejudiced by the lack of counsel at the motion to reinstate hearing because reinstatement of the complaint was an automatic consequence of the defendant's failure to timely pay the fine, thereby rendering the hearing "largely ministerial." To the contrary, had the court considered reinstatement of the complaint a truly "automatic" consequence of the defendant's failure to pay the fine, it could have reinstituted the complaint without holding a hearing or before the State had even filed the motion to reinstate the complaint.

Additionally, the record is not clear that the defendant's failure to timely pay the fine imposed as part of the disorderly conduct sentence would result in reinstatement of the OAS complaint. The court's March 2018 orders regarding

8

the complaint placed on file were not wholly consistent regarding the conduct that would trigger reinstatement of the complaint. At the sentencing hearing for the disorderly conduct conviction, the court explained to the defendant that "as long as you're on good behavior, meaning no major motor vehicle violations, no misdemeanors, no felonies, and you comply with the terms of the disorderly conduct sentence, then after two years the OAS would be dismissed, otherwise it gets placed back on the trial docket." (Emphasis added.) However, the "placed on file agreement" that the parties and the court signed regarding the OAS complaint is less clear. (Capitalization and bolding omitted.) That agreement states that the complaint was placed on file without a finding for two years "conditioned upon good behavior." The agreement also includes the following language:

> Under terms of this agreement, defendant waives right to speedy trial, and terms of disorderly sentence.

Under these facts, we are not persuaded that the court's March 2018 orders contemplated the automatic reinstatement of the OAS complaint such that the defendant's representation by counsel at the October 2018 hearing was essentially pointless.

In sum, we conclude that the State has not met its burden of proving that the defendant did not suffer prejudice as a result of the court's error in reinstating the OAS complaint when the defendant lacked counsel. Accordingly, we vacate the defendant's OAS conviction, and we also vacate the reinstatement of the OAS complaint. On remand, the defendant must be afforded the opportunity to retain counsel, or request appointed counsel, prior to the court's ruling on the State's motion to reinstate the OAS complaint. Because the defendant prevails on his claim under the State Constitution, we need not address his claim under the Federal Constitution. See Ball, 124 N.H. at 237. Additionally, the defendant argues that, if he prevails on his right-to-counsel argument, we should remand for further development of the record regarding his claim that the trial court erred when it reinstated the complaint without first making an "ability to pay" finding. We, accordingly, do not reach the merits of that issue; the defendant may raise it on remand.

<u>Vacated and remanded</u>.

HICKS, and BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Timothy A. Gudas,
Clerk**

9